[No. C031031. Third Dist. Sept. 28, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES EDWARD HOAG, Defendant and Appellant.

## COUNSEL

Leupp & Wachob, Thomas A. Leupp and Jeffrey Rue for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Harry Joseph Colombo and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—In this matter we conclude a party who is absent at the time of a search of his home nevertheless has a sufficient privacy interest in the premises to assert a knock-notice violation. However, we also conclude that, under the circumstances of this case, the police officers executing a search warrant on defendant's home substantially complied with the knock-notice requirements of Penal Code section 1531 despite failing to wait a sufficient time before entering to permit any occupant therein to respond. Consequently, the search was not unreasonable within the meaning of the Fourth Amendment.

Following denial of his suppression motion, defendant pleaded guilty to possession of marijuana for sale (Health & Saf. Code, § 11359) and was placed on three years' probation. He appeals challenging only the denial of his suppression motion. (Pen. Code, § 1538.5, subd. (m).) We affirm.

### FACTS AND PROCEDURAL HISTORY[1]

Defendant lived in Rocklin, California, with his fiancée, Elizabeth Cunnagin, and their five-year-old daughter. On the evening of December 8, 1997, Cunnagin had to study for finals in her nursing classes and defendant took the couple's child to a babysitter. Defendant left around 7:00 or 7:15 p.m. and was expected to return in half an hour.

---

[1]The facts are taken from the transcript of the hearing on defendant's motion to suppress evidence (Pen. Code, § 1538.5).

While defendant was away, five Placer County Sheriff's deputies served a search warrant on the residence. They opened a wooden gate and walked up to the front door. A deputy knocked on the door and announced "Sheriff's Department, search warrant, we demand entry." Hearing no response, he knocked and gave notice again. There was still no response. Another deputy tried the door handle and, finding the door unlocked, opened it slightly. The deputies entered together. They estimated 15 to 20 seconds had elapsed between their first knock and their entry.

The deputies found Cunnagin sitting on or getting up from a couch in the living room. She was surrounded by books and papers and appeared to be doing homework. According to the officers, music was playing, but not loudly; it was not audible from outside.[2] There was a dog present, probably in the garage, which the deputies put in a bathroom so they could conduct the search without distraction.

Cunnagin testified she did not hear the deputies open the gate to the residence and did not hear a knock or announcement before the deputies entered. The first thing she heard was the click of her front doorknob. The deputies seized, handcuffed, and questioned Cunnagin, but did not arrest her. No contraband was found in the house, but marijuana was found in the garage.

Defendant returned home and opened his garage door to find three deputies inside conducting a search. He was placed in custody and thereafter charged with possession of marijuana for sale. (Health & Saf. Code, § 11359.)

Defendant moved to suppress the evidence obtained in the search of his residence on the ground the deputies violated Penal Code section 1531, rendering the subsequent search "unreasonable" under the Fourth Amendment to the United States Constitution. The trial court denied the motion, concluding defendant's absence from the residence deprived him of the right to challenge the alleged knock-notice violation. At defendant's request, the court went on to rule that 15 to 20 seconds was not long enough for the deputies to have waited to satisfy the knock-notice requirement under the circumstances presented.

Defendant thereafter pleaded guilty to the charged offense and was placed on three years' probation.

---

[2]Cunnagin denied she had music playing, insisting she needed silence to study. The trial court made no factual finding as to this conflict in the evidence.

DISCUSSION

I

*Defendant's Right to Challenge the Knock-notice Violation*

The United States Supreme Court has declared as a matter of federal constitutional law: "[T]he common-law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry." (*Wilson v. Arkansas* (1995) 514 U.S. 927, 930 [115 S.Ct. 1914, 1916, 131 L.Ed.2d 976, 980] (*Wilson*).) Long before *Wilson*, the California courts had applied a Fourth Amendment standard to knock-notice questions. (*Duke v. Superior Court* (1969) 1 Cal.3d 314, 325 [82 Cal.Rptr. 348, 461 P.2d 628]; *Greven v. Superior Court* (1969) 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432]; *People v. Gastelo* (1967) 67 Cal.2d 586, 588-589 [63 Cal.Rptr. 10, 432 P.2d 706]; see *People v. Rosales* (1968) 68 Cal.2d 299, 304-305 [66 Cal.Rptr. 1, 437 P.2d 489] [Pen. Code, § 844 (arrest warrants)].)

Under the Fourth Amendment, a person may challenge the legality of a search or seizure only if he can show a personal interest in the privacy of the place searched or the item seized; he may not vicariously challenge the alleged violation of another's interests. (*Rakas v. Illinois* (1978) 439 U.S. 128, 132-138 [99 S.Ct. 421, 424-428, 58 L.Ed.2d 387, 393-398] (*Rakas*).) California follows the *Rakas* rule. (Cal. Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].)

In assessing a defendant's right to challenge a particular Fourth Amendment violation, it is useful to consider the interests sought to be protected by the rule at issue. California courts have identified the following rationale for knock-notice: " '(1) The protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder.' " (*People v. Peterson* (1973) 9 Cal.3d 717, 723 [108 Cal.Rptr. 835, 511 P.2d 1187]; *People v. Aguilar* (1996) 48 Cal.App.4th 632, 637 [55 Cal.Rptr.2d 716].) The United States Supreme Court in *Wilson* stressed an additional factor not spelled out in the California rationale but lying at the root of the knock-notice rule in English common law: the law's abhorrence of the unnecessary " 'destruction or breaking of

any house . . . .' " (*Wilson, supra*, 514 U.S. at p. 931 [115 S.Ct. at pp. 1916-1917, 131 L.Ed.2d at p. 981].)

We are aware of no post-*Wilson* California decisions which have considered an absent party's right to challenge a knock-notice violation under the Fourth Amendment. However, at least three sister state decisions have considered the issue. Of these, *Mazepink v. State* (1999) 336 Ark. 171 [987 S.W.2d 648] (*Mazepink*) is the most persuasive.[3] In *Mazepink*, the Arkansas Supreme Court held squarely in reliance on *Wilson* and the United States Supreme Court's prior definition of "legitimate expectation of privacy" (*Rakas, supra*, 439 U.S. 128 [99 S.Ct. 421, 58 L.Ed.2d 387]), that a defendant who was absent when the police searched his residence nevertheless had the requisite privacy interest to raise a knock-notice claim. The *Mazepink* court first quoted the *Rakas* discussion of what constitutes a legitimate expectation of privacy: " 'Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, . . . and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude.' " (*Mazepink, supra*, 987 S.W.2d at p. 651, quoting *Rakas, supra*, 439 U.S. at p. 143, fn. 12 [99 S.Ct. at p. 431, 58 L.Ed.2d at p. 401], italics omitted.) The court then reasoned that in light of *Rakas* the defendant had a legitimate expectation of privacy in his residence regardless of whether he was there when the police arrived: "It seems irrelevant under these circumstances that Mazepink was not actually present at the time of entry; his standing to seek exclusion of the evidence obtained after the search is grounded in his right to exclude others and to be free from illegal police invasion of his privacy in his residence. Furthermore, Mazepink's legitimate expectation of privacy in his residence encompasses the right to expect not only privacy for himself, but for his family and invitees, including [the persons who were present at the time of

---

[3]Of the other two out-of-state decisions, *Com. v. Carlton* (1997) 549 Pa. 174 [701 A.2d 143] involved a defendant who produced evidence showing he used the searched residence as his address and the court concluded he had demonstrated the requisite privacy interest to raise a knock-notice claim. However, the court based this holding on Pennsylvania law without discussing *Wilson* or the Fourth Amendment. (*Com. v. Carlton, supra*, 549 Pa. at pp. 179-180 [701 A.2d at pp. 145-146].) In *Righter v. State* (Del. 1997) 704 A.2d 262, the defendant lived in his mother's apartment but did not own it, pay rent, or do maintenance and the court concluded he had no property interest sufficient to allow him to raise a knock-notice challenge. The defendant had conceded his absence from the residence at the time of the police entry deprived him of any other basis for claiming a Fourth Amendment violation. (*Id.* at pp. 266-267.)

entry]." (*Mazepink, supra,* 987 S.W.2d at p. 652.) The court also noted that on the facts of the case the "destruction of property" factor described in *Wilson* gave the defendant an additional claim to standing because the police had forced entry into his house, damaging the property. (*Mazepink, supra,* 987 S.W.2d at pp. 651-652.)

Here, as in *Mazepink,* defendant had a legitimate expectation of privacy "grounded in his right to exclude others[,] to be free of illegal police invasion of his privacy in his residence . . . [and] to expect not only privacy for himself, but for his family and invitees . . . ." (*Mazepink, supra,* 987 S.W.2d at p. 652; see also *People v. Peterson, supra,* 9 Cal.3d at p. 723 [purposes of knock-notice include " 'the protection of innocent persons who may also be present on the premises where an arrest is made . . .' "].) Defendant had a sufficient personal interest in the safety of the mother of his child, who was present when the officers entered his residence, to allow him to challenge the mode of entry.

Furthermore, defendant has a right to be protected from the unnecessary destruction of his property. Of course, in *Mazepink,* the police literally broke into the defendant's home. However, the level of defendant's protected interest in the premises does not depend on the fortuity of whether the police actually break down his door (see *People v. Rosales, supra,* 68 Cal.2d at p. 303; *People v. Hobbs* (1987) 192 Cal.App.3d 959, 965-966 [237 Cal.Rptr. 742] [entry through unlocked but closed door is a "breaking" under Pen. Code, § 1531]), just as his right to assert the gamut of privacy interests in his residence under the Fourth Amendment does not depend on the fortuity of whether he happens to be present when the police arrive.

The People cite three federal appellate decisions which held or suggested that parties not present when the police search their residences may not assert a violation of the federal "knock and announce" statute (18 U.S.C. § 3109). (See *U.S. v. Zermeno* (9th Cir. 1995) 66 F.3d 1058, 1062 (*Zermeno*); *U.S. v. Valencia-Roldan* (9th Cir. 1990) 893 F.2d 1080, 1081, fn. 1 (*Valencia-Roldan*); *United States v. DeLutis* (1st Cir. 1983) 722 F.2d 902, 908 (*DeLutis*).) However, these lower federal court decisions are not binding on this court (*People v. Neer* (1986) 177 Cal.App.3d 991, 1000-1001 [223 Cal.Rptr. 555]) and, in light of *Wilson,* are not persuasive.

Furthermore, *DeLutis* and *Valencia-Roldan* predate *Wilson* and do not consider the defendants' claims in light of the Fourth Amendment. (*Valencia-Roldan, supra,* 893 F.2d at p. 1081, fn. 1; *DeLutis, supra,* 722 F.2d at p. 908.) *Zermeno,* though published after *Wilson,* equally fails to consider the Fourth Amendment's reasonableness test. (*Zermeno, supra,* 66 F.3d at p.

1062.) Finally, none of the decisions are persuasive even in light of pre-*Wilson* law.

*DeLutis*, the earliest of the cited decisions, relies on a rationale for the federal "knock and announce" statute which is less comprehensive than the California courts' rationale for Penal Code section 1531, which is grounded in Fourth Amendment concerns. (*DeLutis, supra,* 722 F.2d at p. 908; compare *Sabbath v. United States* (1968) 391 U.S. 585 [88 S.Ct. 1755, 1757-1758, 20 L.Ed.2d 828, 833] [18 U.S.C. § 3109's purposes are to protect the "individual's right of privacy in his home" and "to safeguard officers"], with *People v. Peterson, supra,* 9 Cal.3d at p. 723 [The purposes of knock-notice additionally include " 'the protection of innocent persons who may also be present on the premises where an arrest is made' " and " 'the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice' "].) *DeLutis*'s statutory rationale also fails to mention the law's desire to safeguard residents against the unnecessary destruction of their property. (Cf. *Wilson, supra,* 514 U.S. at p. 931 [115 S.Ct. at pp. 1916-1917, 131 L.Ed.2d at pp. 980-981].)

*Valencia-Roldan*, the second in time of the cited decisions, offers no reasoning or authority for its holding, merely asserting it baldly in a footnote. (*Valencia-Roldan, supra,* 893 F.2d at p. 1081, fn. 1.) Finally, *Zermeno* relies exclusively on *DeLutis* and *Valencia-Roldan* and provides no additional analysis. (*Zermeno, supra,* 66 F.3d at p. 1062.)

For all the above reasons, we conclude defendant had a reasonable expectation of privacy in the residence searched sufficient to allow him to assert a knock-notice violation.

II

*Knock-notice Violation*

 Defendant contends the trial court correctly concluded the officers waited an unreasonably short time before entering the residence.[4] He further contends neither the inevitable discovery rule nor the independent source

---

[4]Following briefing on appeal, we directed the parties to submit supplemental letter briefs on the following: "The trial court found that the officers waited approximately 15 to 20 seconds from the first knock and announcement at defendant's door to the moment they entered his residence. Under the totality of the circumstances, did the trial court err by

rule provides a basis for avoiding suppression of the evidence seized from his residence.[5] Because we disagree with defendant's first contention, it is unnecessary to consider the other. As we shall explain, any knock-notice violation, under the circumstances presented, did not render the subsequent search unreasonable within the meaning of the Fourth Amendment.

█ In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's findings of fact, both express and implied, if supported by substantial evidence. We then independently apply the pertinent legal principles to those facts to determine, as a matter of law, whether there has been an unreasonable search or seizure. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922 [21 Cal.Rptr.2d 785].)

█ Penal Code section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Entry through an unlocked but closed door is a "breaking" within the meaning of this statute. (*People v. Rosales*, *supra*, 68 Cal.2d at p. 303.) An unreasonable delay in responding to a knock and announce is tantamount to a refused admittance. (*People v. Elder* (1976) 63 Cal.App.3d 731, 739 [134 Cal.Rptr. 212].)

█ The trial court made two findings of fact pertinent to this matter: (1) the officers waited 15 to 20 seconds after first knocking before entering the residence, and (2) the officers had no reason to believe there was anyone present in the residence at the time of entry. Implicit in these express findings is an additional finding that the officers did in fact knock and announce their presence and purpose before entering. These findings are supported by substantial evidence. From the foregoing, the trial court concluded there had been a violation of knock-notice.

In light of the trial court's factual findings, its determination of a knock-notice violation is necessarily premised on the length of time the officers waited before entry. In effect, the court concluded a 15-to-20-second delay, under the circumstances, did not amount to a refused admittance, i.e., the officers did not give the occupant a sufficient time to respond.

---

concluding as a matter of law that this was an unreasonably short time to wait before entering?"

[5]We also requested supplemental letter briefs on whether, assuming a knock-notice violation, the evidence seized at the residence was a suppressible fruit of that violation or whether the evidence would have been discovered anyway.

Assuming the trial court was correct in this regard, the inquiry does not end there.[6] ■■ "Pursuant to article I, section 28, of the California Constitution, a trial court may exclude evidence under Penal Code section 1538.5 only if exclusion is mandated by the federal Constitution." (*People v. Banks* (1993) 6 Cal.4th 926, 934 [25 Cal.Rptr.2d 524, 863 P.2d 769].) Exclusion is mandated under the federal Constitution only if the search or seizure was unreasonable in light of the totality of the circumstances presented. (See *Ohio v. Robinette* (1996) 519 U.S. 33, 39 [117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354-355, 148 A.L.R. Fed. 739].)

■■ Although a violation of knock-notice could render a search unreasonable within the meaning of the Fourth Amendment (see *Wilson, supra,* 514 U.S. at p. 930 [115 S.Ct. at p. 1916, 131 L.Ed.2d at p. 980]), not every technical violation will have this effect (*People v. Tacy* (1987) 195 Cal.App.3d 1402, 1415-1416 [241 Cal.Rptr. 400]). California appellate courts have recognized the concept of substantial compliance in appropriate circumstances. (See *People v. Jacobs* (1987) 43 Cal.3d 472, 482-483 [233 Cal.Rptr. 323, 729 P.2d 757].) " 'Substantial compliance means " '*actual* compliance in respect to the substance essential to every reasonable objective of the statute,' as distinguished from 'mere technical imperfections of form.' " ' (*People v. Jacobs*[, *supra,*] 43 Cal.3d [at p.] 483 [233 Cal.Rptr. 323, 729 P.2d 757]; italics in original.) The essential inquiry is whether under the circumstances the policies underlying the knock-notice requirements were served. (*Ibid.*)" (*People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1227 [266 Cal.Rptr. 473].)

In *People v. Tacy, supra,* 195 Cal.App.3d 1402, police officers approached an apartment to serve a search warrant. The front door of the apartment was open and only a screen door separated the officers from the occupants. The officers were dressed in police clothing and one or more had guns drawn. They made eye contact with a resident lying on a couch, identified themselves and informed the resident of the warrant and their intent to search the residence. They directed the occupant to remain on the couch and entered. (*Id.* at pp. 1406-1407.) Under these circumstances, and despite the failure of the officers either to knock or to allow the occupant an opportunity to admit them, the court found substantial compliance with the knock-notice requirement. (*Id.* at p. 1421.) According to the court, any invasion of privacy was minimal and the purposes underlying the knock-notice requirement were in no way frustrated. (*Ibid.*)

In *People v. Trujillo, supra,* 217 Cal.App.3d 1219, six officers approached the door to a residence to execute a search warrant. One officer knocked four

---

[6]Because the trial court found defendant did not have a sufficient privacy interest in the premises to permit him to seek suppression of the evidence, it had no reason to consider whether suppression was an appropriate remedy under the circumstances.

times and announced, " 'San Jose police, we have a search warrant.' " He heard movement inside but there was no response to the knock. He knocked again and, 18 seconds after the first knock, kicked in the door. (*Id.* at p. 1224.) The court concluded the officers had not waited a sufficient time to constitute a refused admittance under the circumstances. (*Id.* at pp. 1226-1227.) However, the court also found there had been substantial compliance with the knock-notice requirement. The court explained that the dual policies of the knock-notice requirement—to prevent injury to police or citizens and to protect privacy interests—were served under the circumstances presented. (*Id.* at pp. 1227-1228.) According to the court: "[U]nder all the circumstances, the police delayed entry long enough after knocking and announcing themselves and their purpose to protect defendant's reduced expectation of personal privacy, even though the delay was not long enough to amount to an implicit refusal of entry." (*Id.* at p. 1228.)[7]

The concept of substantial compliance, as reflected in the foregoing cases, is consistent with general principles of Fourth Amendment analysis. As explained previously, the federal high court held in *Wilson* that a violation of knock-notice is *part of* the reasonableness inquiry under the Fourth Amendment. (*Wilson, supra,* 514 U.S. at p. 930 [115 S.Ct. at p. 1916, 131 L.Ed.2d at p. 980].) There, police officers armed with a warrant opened the unlocked screen door of the defendant's residence and entered while identifying themselves and stating they had a warrant. The state trial court denied the defendant's suppression motion, and this was affirmed on appeal. (*Id.* at p. 930 [115 S.Ct. at p. 1916, 131 L.Ed.2d at p. 980].) However, the United States Supreme Court reversed, explaining: "Our own cases have acknowledged that the common-law principle of announcement is 'embedded in Anglo-American law,' [citation], but we have never squarely held that this principle is an element of the reasonableness inquiry under the Fourth Amendment. We now so hold. Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the

---

[7]The dissent argues *Tacy* and *Trujillo* are inapposite because, in both cases, the officers were aware somebody was inside when they forced entry. According to the dissent, this matter is controlled by *Jeter v. Superior Court* (1983) 138 Cal.App.3d 934 [188 Cal.Rptr. 351], because there, as here, the police were not aware anyone was present when they entered. The dissent's analysis—lining up the prior cases and deciding which one is closest factually—suggests an unwillingness to confront the legal principles at issue. In *Jeter*, the court merely concluded the officers violated Penal Code section 1531 when they knocked and announced, waited a " 'few seconds,' " knocked and announced again, waited " 'five or ten seconds' " and then entered. (*Jeter, supra,* 138 Cal.App.3d at pp. 936-937.) The court applied the pre-*Wilson* California rule that a violation of Penal Code section 1531 alone renders the search unreasonable under the Fourth Amendment. (*Jeter, supra,* 138 Cal.App.3d at p. 938.) The court did not consider any other factors in assessing reasonableness of the search and did not discuss substantial compliance. Cases are not authority for propositions not considered therein. (*McKeon v. Mercy Healthcare Sacramento* (1998) 19 Cal.4th 321, 328 [79 Cal.Rptr.2d 319, 965 P.2d 1189].) Under both the substantial compliance doctrine and, as we shall explain, proper Fourth Amendment analysis, the dissent's reliance on *Jeter* is misplaced.

Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure." (*Id.* at p. 934 [115 S.Ct. at p. 1918, 131 L.Ed.2d at p. 982], fn. omitted.)

In *Richards v. Wisconsin* (1997) 520 U.S. 385 [117 S.Ct. 1416, 137 L.Ed.2d 615] (*Richards*), the court reiterated that knock-notice is a part of the reasonableness inquiry of the Fourth Amendment. The Wisconsin Supreme Court had concluded police officers are never required to knock and announce when executing a search warrant in a felony drug matter because of the inherent risks and the potential for destruction of evidence. (520 U.S. at pp. 388-392 [117 S.Ct. at pp. 1419-1420, 137 L.Ed.2d at pp. 621-622].) In rejecting this per se approach, the federal high court explained the circumstances of a given search may nullify the concerns expressed by the Wisconsin Supreme Court: "[W]hile drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree. For example, a search could be conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence. Or the police could know that the drugs being searched for were of a type or in a location that made them impossible to destroy quickly. In those situations, the asserted governmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon by a no-knock entry." (520 U.S. at p. 393 [117 S.Ct. at p. 1421, 137 L.Ed.2d at p. 623].)

"As *Richards* makes clear, *Wilson* neither announced an absolute knock-and-announce rule nor created categorical exceptions to the rule for felony drug cases." (*Aponte Matos v. Toledo Davila* (1st Cir. 1998) 135 F.3d 182, 190.) The court held only that a knock-notice violation "is part of the Fourth Amendment inquiry—not the end of it." (*U.S. v. Fields* (2d Cir. 1997) 113 F.3d 313, 323.)

In *Rodriguez v. Superior Court* (1988) 199 Cal.App.3d 1453 [245 Cal.Rptr. 617], the court considered whether a violation of Penal Code section 1533, which requires a showing of good cause for inclusion in a search warrant of a provision for nighttime service, requires suppression. Earlier decisions so held. (See *Tuttle v. Superior Court* (1981) 120 Cal.App.3d 320, 332 [174 Cal.Rptr. 576]; *People v. Watson* (1977) 75 Cal.App.3d 592, 597-600 [142 Cal.Rptr. 245].) However, in light of article I, section 28, subdivision (d) of the state Constitution and existing federal law, the court held suppression is not *mandated.* (*Rodriguez v. Superior Court,*

*supra,* 199 Cal.App.3d at p. 1469.) Rather, considering the violation of the nighttime service requirement in light of the totality of the circumstances, the court concluded: "Nothing in the record before us suggests anything unreasonable in the nighttime search of the . . . residence beyond the statutory violation in executing the warrant at approximately 10:30 p.m., and we therefore conclude the evidence seized in that search need not be excluded." (*Id.* at p. 1470.)

■ In the present matter, although there was a technical violation of the knock-notice requirement in that the officers did not wait a sufficient time before entering, the essential Fourth Amendment inquiry is whether, under the totality of the circumstances, the policies underlying the knock-notice requirement have nevertheless been served. (*Trujillo, supra,* 217 Cal.App.3d at p. 1227.) As indicated previously, the purposes underlying the knock-notice requirement have been identified as " '(1) the protection of the privacy of the individual in his home . . . ; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice . . . ; and (4) the protection of police who might be injured by a startled and fearful householder.' " (*People v. Peterson, supra,* 9 Cal.3d at p. 723; see also *People v. Aguilar, supra,* 48 Cal.App.4th at p. 637.) Another relevant consideration is the law's abhorrence of the unnecessary destruction of private property. (*Wilson, supra,* 514 U.S. at p. 931 [115 S.Ct. at pp. 1916-1917, 131 L.Ed.2d at p. 981].)

Under the facts of this case, none of these policy concerns is implicated. The officers approached the front door of the residence and knocked and announced their presence and purpose twice. They waited 15 to 20 seconds before proceeding further. They turned the handle on the unlocked door and opened it slightly before opening it all the way and entering. The officers did not rush the occupant or destroy property. There is nothing in the record to suggest either the occupant or the officers were ever at risk.

" 'To the extent that the [knock-notice] rule prevents violence, its utility is exhausted when the actual announcement is made. . . . [¶] The interest in preventing the unnecessary destruction of private property is clearly not present when officers enter through an unlocked door. . . . [¶] . . . The simple fact is that a homeowner has no right to prevent officers armed with a warrant . . . from entering his home. At the most, the "refusal of admittance" requirement gives him a few moments to decide whether or not he will open the door himself. [Citation.] [¶] . . . [L]ittle, if anything is gained by permitting the occupant to open the door to an entry that he cannot legally

resist.' " (*People v. Uhler* (1989) 208 Cal.App.3d 766, 770 [256 Cal.Rptr. 336], quoting *United States v. Bustamante-Gamez* (9th Cir. 1973) 488 F.2d 4, 11-12.)

While 15 to 20 seconds might be too short of a wait for "a house of gargantuan proportions" or a search "during a time normally associated with sleeping" (see *People v. Elder, supra*, 63 Cal.App.3d at p. 739), here the residence was only 1,500 to 1,800 square feet in size and the search occurred in the early evening. "If an acknowledging voice from within had responded, 20 seconds may have been too short a time to wait." (*Ibid.*) However, the officers here heard nothing: no sound of feet approaching the door and no voice suggesting a response was forthcoming. Under the totality of the circumstances presented in this matter, we conclude the officers substantially complied with the knock-notice requirement and suppression of the evidence was properly denied.[8]

### DISPOSITION

The judgment is affirmed.

MORRISON, J.— ██ ██ ██ I concur.

I agree the knock-notice (or knock and announce) rule, although codified in California (Pen. Code, §§ 844 [arrests], 1531 [search warrants]), reflects a common law rule which is an aspect of what is reasonable under the Fourth Amendment. (*Wilson v. Arkansas* (1995) 514 U.S. 927, 930 [115 S.Ct. 1914, 1916, 131 L.Ed.2d 976, 980] (*Wilson*).) Prior to Proposition 8, the California Supreme Court came to a similar conclusion. (*Greven v. Superior Court* (1969) 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432]; see *Duke v. Superior Court* (1969) 1 Cal.3d 314, 325 [82 Cal.Rptr. 348, 461 P.2d 628].) The rule protects privacy of individuals in their homes, protects innocent

---

[8]The dissent accuses us of undertaking a post hoc analysis of whether the policies underlying the knock-notice requirement were implicated by the search in this matter. That is simply untrue. Unlike the dissent, which apparently considers it dispositive that the officers waited only 15 to 20 seconds before entering, we consider under the totality of the circumstances that the officers approached the front of the residence, they knocked and announced twice, they opened the door using the handle rather than breaking down the door, and they did not rush the occupant. This is not an after-the-fact rationalization but a description of the reasonable means by which the officers initiated their search. Although we indicate there is nothing to suggest the officers or occupant were ever at risk, this is based on the officers' conduct leading up to the entry, which was not threatening, rather than what transpired thereafter. The suggestion that we have somehow created a "hindsight-makes-right" rule is nothing more than an attempt in vain to draw attention away from the dissent's refusal to consider the totality of the circumstances presented in this matter to determine if the search was reasonable.

guests, prevents violent confrontations between peace officers and citizens, and protects " 'police who might be injured by a startled and fearful house-holder.' " (*People v. Peterson* (1973) 9 Cal.3d 717, 723 [108 Cal.Rptr. 835, 511 P.2d 1187].)

But this does not mean every search which violates the knock-notice rule requires exclusion of evidence. I agree with Justice Hull that the severity of a knock-notice violation must be assessed before concluding the Fourth Amendment has been violated. *Wilson* held knock-notice forms a component of the Fourth Amendment reasonableness calculation, but did not hold all knock-notice violations were Fourth Amendment violations. The dissenting opinion fails to address this point. The lead opinion does not hold that substantial compliance excused the knock-notice violation, only that it serves to avoid the need to apply the draconian remedy of excluding relevant evidence from the trial. In other words, it takes more than a close call, that is, waiting a few more seconds, to create a search that is unreasonable under the Fourth Amendment.

The use of the term "substantial compliance" is confusing as it obscures the Fourth Amendment analysis. Only after a court finds a violation of the knock-notice statute does the question whether there was an unreasonable search under the Fourth Amendment arise. The phrase "substantial compliance" sometimes conflates two distinct questions. Did the search violate the knock-notice statute and did other facts excuse the violation? In this case, an unexcused statutory knock-notice violation occurred. But that does not mean that there was an unreasonable search that would compel the exclusion of relevant evidence.

Even if the facts did show a Fourth Amendment violation, I write separately to explain another ground for affirmance: inevitable discovery. The trial court did not address this principle, although it was briefed and argued by the district attorney in the trial court.

In 1982 the People of the State of California amended the California Constitution to require that except for a statute passed by two-thirds of the Legislature, and exceptions not here applicable, "relevant evidence shall not be excluded in any criminal proceeding[.]" (Cal. Const., art. I, § 28, subd. (d).)

This state constitutional provision, the "Right to Truth-in-Evidence," cannot trump exclusionary rules that are compelled by the Constitution of the United States. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].)

The application of inevitable discovery to knock-notice violations was briefed before the United States Supreme Court by the California Attorney General, but the court declined to decide the point. (*Wilson, supra,* 514 U.S. at p. 937, fn. 4 [115 S.Ct. at p. 1919, 131 L.Ed.2d 984].) The question has not been decided by the California Supreme Court in any post-Proposition 8 decision.

While the California Supreme Court has held, generally, that violation of knock-notice makes a search " 'unreasonable' " (*Duke v. Superior Court, supra,* 1 Cal.3d at p. 325; *Greven v. Superior Court, supra,* 71 Cal.2d at p. 290), these cases predate Proposition 8 and also predate the seminal United States Supreme Court decision explaining the inevitable discovery doctrine, *Nix v. Williams,* decided in 1984. (*Nix v. Williams* (1984) 467 U.S. 431, 442-443 [104 S.Ct. 2501, 2508-2509, 81 L.Ed.2d 377] (*Nix*).) Cases are not authority for propositions not considered. (*Hart v. Burnett* (1860) 15 Cal. 530, 598.) I am aware that *People v. Neer* (1986) 177 Cal.App.3d 991 [223 Cal.Rptr. 555] concluded, over a vigorous dissent, a knock-notice violation requires exclusion, even after the passage of Proposition 8. However, *Neer* did not consider the inevitable discovery issue. To the extent the *Neer* majority opinion implies a California Court of Appeal cannot apply Proposition 8 to reach a result contrary to a California Supreme Court decision predating Proposition 8 (*Neer,* 177 Cal.App.3d at p. 999), I disagree. There is also one Fourth District Court of Appeal opinion to the contrary, but the decision, as even defendant concedes in his brief, contains no analysis of the question. (See *Loverde v. Superior Court* (1984) 162 Cal.App.3d 102, 104, 105 [208 Cal.Rptr. 134] [prosecution conceded error in applying doctrine].) The issue is open for decision.

Opponents of the application of inevitable discovery to knock-notice violations argue it eviscerates the knock-notice rule. I disagree. The rule stands; only the remedy differs. Given the clear command of article I, section 28, subdivision (d) of our Constitution, we are not free to favor the exclusionary remedy over other remedies. As stated by our Supreme Court, "[T]he members of this court have diverse views regarding the importance and proper scope of the exclusionary rule as it has developed over the years. Faced with a constitutional amendment adopted by initiative, however, we are obliged to set aside our personal philosophies and to give effect to the expression of popular will, as best we can ascertain it, within the framework of overriding constitutional guarantees." (*In re Lance W., supra,* 37 Cal.3d at p. 879.)

There are ways to deter illegal conduct by peace officers without letting criminals escape punishment, including training, discipline, consent decrees

and civil damage actions. (See, e.g., *Bivens v. Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619].) In California, "The people have apparently decided that the exclusion of evidence is not an acceptable means of implementing [constitutional] rights, except as required by the Constitution of the United States. Whether they are wise in that decision is not for our determination; it is enough that they have made their intent clear." (*In re Lance W., supra,* 37 Cal.3d 873, 887.)

The dissent argues that "an unenforceable rule—one whose violation has no adverse consequences for the violator—is in effect no rule at all." (Dis. opn., *post,* at p. 1233.) This is true, but the exclusion of relevant evidence is not the only and not even the most effective technique to enforce the statutory and constitutional "knock-notice" rule. We, the judiciary, cannot claim that we and we alone wield the only power or possess the only wisdom to enforce rules.

Under the federally mandated exclusionary rule, the "fruits" of illegal conduct by peace officers are excluded, to deter Fourth Amendment violations. (*Wong Sun v. United States* (1963) 371 U.S. 471, 484-486 [83 S.Ct. 407, 415-417, 9 L.Ed.2d 441, 453-454]; *Mapp v. Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933].) Exclusion is not always required. "A 'fruit' may be admitted if there was an independent source for it; it would have been found anyway; or the path from the illegality to the 'fruit' is too 'attenuated.' " (*People v. Neely* (1999) 70 Cal.App.4th 767, 785 [82 Cal.Rptr.2d 886].)

The second of these exceptions is referred to as the inevitable discovery rule. "The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired." (*Nix, supra,* 467 U.S. 431, 442-443 [104 S.Ct. 2501, 2508, 81 L.Ed.2d 377, 386-387].) Nor, however, is it to be put in a worse position. (*Id.* at pp. 443-445 [104 S.Ct. at pp. 2508-2510, 81 L.Ed.2d at pp. 387-388]; see *People v. Neely, supra,* 70 Cal.App.4th at p. 787 ["the desire to punish and deter misconduct by government agents must not be *over*valued"].) "Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." (*Nix, supra,* 467 U.S. at p. 446 [104 S.Ct. at p. 2510, 81 L.Ed.2d at p. 389].)

The rule poses a factual causation question: Would the evidence have been found, absent the illegal conduct? "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." (*Nix, supra,* 467 U.S. at p. 444 [104 S.Ct. at p. 2509, 81 L.Ed.2d at pp. 387-388], fn. omitted.)

As Judge Richard Posner recently explained: "Concern with the frequent disproportionality of the sanction of exclusion has led judges to create exceptions to the exclusionary rule, itself a rule of federal common law (that is, of judge-made law) rather than a part of the Fourth Amendment itself and so amenable to judge-made adjustment. . . . [T]he exception that is most pertinent to this case goes by the name of 'inevitable discovery' and refuses to suppress evidence seized in an unconstitutional search if it is shown that the evidence would ultimately have been seized legally if the constitutional violation had not occurred. [Citations.] In other words, just as careless or even willful behavior is not actionable as a tort unless it causes injury, [citation], so there must be a causal relation between the violation of the Fourth Amendment and the invasion of the defendant's interests for him to be entitled to the remedy of exclusion. In a case of inevitable discovery, the defendant would by definition have been no better off had the violation of his constitutional rights not occurred, because the evidence would in that event have been obtained lawfully and used lawfully against him." (*U.S. v. Stefonek* (7th. Cir. 1999) 179 F.3d 1030, 1035.)

The United States Supreme Court has not suggested the inevitable discovery rule applies to some, but not other, exclusionary rules and, in particular, it has left open the application of the exception to situations involving violations of the knock-notice rule. (*Wilson, supra,* 514 U.S. at p. 937, fn. 4 [115 S.Ct. at p. 1919, 131 L.Ed.2d at p. 984]; see *United States v. Ramirez* (1998) 523 U.S. 65, 72, fn. 3 [118 S.Ct. 992, 997, 140 L.Ed.2d 191, 198-199] [reserving whether "there was sufficient causal relationship between the breaking of the window and the discovery of the guns to warrant suppression"].) I know of no principled reason not to apply the general rule that inevitably discovered evidence may not be excluded in such cases.

The dissent would apply decisions predating *Nix, supra,* 467 U.S. 431 [104 S.Ct. 2501, 81 L.Ed.2d 377], but offers no reason why the later-announced inevitable discovery rule of *Nix* does not apply in knock-notice cases, except that it has never been done before.

Here, assuming the decision of the trial court was correct, the error was not waiting long enough after knocking. Had the officers waited a few

seconds longer, the trial court would have found they were justified in concluding the house was empty or occupants were impliedly refusing admittance, or at least, that the officers waited long enough to trigger the "substantial compliance" rule, not passed on by the trial court. (See *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1227-1228 [266 Cal.Rptr. 473].)

But there is no question the officers were going to enter. What difference would those few seconds have made to the search? None. It is undisputed the only occupant of the house was not poised to destroy the evidence in those few moments which would have made the difference between compliance and noncompliance with the knock-notice rule. Elizabeth Cunnagin was surprised and "seemed a little hurt" when she learned what the deputies found. Defendant's theory in the trial court was Cunnagin had nothing to do with the drugs, and "There was nothing to indicate that she had been attempting to destroy evidence." Accordingly, the evidence was not discovered because of the knock-notice violation, it would have been found anyway. Its discovery and seizure were "inevitable."

I am joined in my view by persuasive dicta from a federal circuit court and by the decisions of the Michigan Supreme Court.

Judge Easterbrook found it unnecessary to decide the issue in a recent case, where even as a team of officers battered in the front door of a house, another team apprehended the defendant on the back lawn. But he said, "A causal link between unlawful police conduct and a seizure is necessary but not sufficient to justify the exclusion of reliable evidence. The inevitable discovery doctrine [citation], and the independent source doctrine, [citation], show that violations of the fourth amendment do not automatically lead to suppression even when the constitutional wrong plays a causal role in the seizure (at least, in the timing of the seizure). Because the exclusionary rule 'detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions', [citation], the Supreme Court is unwilling to sanction its use in marginal cases. [Citation.] *Wilson* reserved the question whether (and, if so, how) the inevitable-discovery and independent-source exceptions to the exclusionary rule apply to searches deemed unreasonable only because officers armed with a warrant failed to make a proper announcement at the door. [Citation.] It is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant; an occupant would hardly be allowed to contend that, had the officers announced their presence and waited longer to enter, he would have had time to destroy the evidence." (*U.S. v. Jones* (7th Cir. 1998) 149 F.3d 715, 716-717, italics omitted.)

I agree with all but the last passage: Because it is undisputed in this case the only occupant was unaware of—and thus unprepared to destroy—the contraband, we do not have occasion to consider the application of the exclusionary rule, the independent source doctrine or the inevitable discovery doctrine, to a case where an occupant would have had a chance to destroy evidence of his criminality.

The Michigan Supreme Court, in post-*Wilson* decisions, has applied the inevitable discovery exception to knock-notice violations. In *People v. Stevens* (1999) 460 Mich. 626 [597 N.W.2d 53] (*Stevens*), the police had a search warrant, knocked, waited 11 seconds, then forced their way in. (*Stevens*, 597 N.W.2d at p. 56.) The court found "excluding the evidence puts the prosecution in a worse position than it would have been in had there been no police misconduct. Therefore, the inevitable discovery exception to the exclusionary rule should be available." (*Id.* at p. 62.) "Even though the method of entry into the dwelling violated the knock-and-announce principles, the evidence inevitably would have been discovered. There are both state and federal sanctions for such violations that serve as deterrents for police misconduct that are less severe than the exclusion of the evidence. Additionally, exclusion of the evidence will put the prosecution in a worse position than if the police misconduct had not occurred. Therefore, we hold that the trial court erred in granting the defendant's motion to suppress the evidence because of the violation of the Fourth Amendment." (*Id.* at p. 64.) The court in *Stevens* mentions *U.S. v. Marts* (8th Cir. 1993) 986 F.2d 1216, 1219, which predates *Wilson, supra,* 514 U.S. 927 [115 S.Ct. 1914, 131 L.Ed.2d 976]. *Marts* states, "The government urges that, even if the officers had waited an additional period of time, the exact same search would have been conducted and the exact same evidence would have been seized. Thus, this 'technical violation' should not exact the full remedy provided by the law. Longstanding constitutional principles regarding unlawful search and seizure bar the government's use of the fruits of an unlawful search simply because the officers 'would have found it anyway.' " This reads *Nix* out of existence; the decision makes no effort to explain why the inevitable discovery rule should not apply. *Marts* is followed by *Mazepink v. State* (1999) 336 Ark. 171 [987 S.W.2d 648], certiorari denied *sub nom. Arkansas v. Mazepink* (1999) 528 U.S. 927 [120 S.Ct. 321, 145 L.Ed.2d 250], which is unpersuasive for the same reason: It ignores the holding and rationale of *Nix*.

The Michigan courts have adhered to *Stevens* in subsequent cases. (*People v. Vasquez* (1999) 461 Mich. 235 [602 N.W.2d 376] [after remand]; see also *People v. Howard* (1998) 233 Mich.App. 52, 61 [595 N.W.2d 497, 502] ["We do not believe this timing error rises to the level of unreasonable police conduct"], leave to app. den. by *People v. Howard* (Mich. 1999) 603 N.W.2d 247.)

I agree the evidence was found following a knock-notice violation. That violation was minor and did not render the search unreasonable within the meaning of the Fourth Amendment. Even if such violation made the search unreasonable, this court has a duty to apply the inevitable discovery exception to such violations, pursuant to *Nix, supra,* 467 U.S. 431 [104 S.Ct. 2501, 81 L.Ed.2d 377]. The evidence would have been discovered regardless of the knock-notice violation. Exclusion of evidence here would result in a defense windfall and would serve no deterrent purpose. Because it is not required by the United States Constitution, exclusion would violate the clear command of the California Constitution.

Because I concur with Justice Hull as to the lack of a Fourth Amendment violation, and because in my view even with such a violation the evidence was not subject to exclusion, it is not necessary for me to express any view as to the standing issue.

The trial court properly denied the motion to suppress, therefore the judgment should be affirmed.

**SIMS, Acting P. J.,** Concurring and Dissenting.— ██ ██ For reasons stated in Justice Hull's opinion, I concur that defendant has standing to challenge the legality of the search and seizure. I respectfully dissent from the remainder of the lead opinion's conclusions. I would hold that the officers' conduct violated the knock-notice rule, the violation is not excused by "substantial compliance," and no exception to the knock-notice rule permits the unlawfully seized evidence to come in. Therefore, this court should reverse and remand with directions to grant defendant's motion to suppress the evidence.

I

The lead opinion decides the case against defendant by invoking "substantial compliance." In other words, granting that a knock-notice violation occurred, the lead opinion brands it a mere technicality which did not frustrate the purposes of the knock-notice rule. I cannot agree. The officers' violation of knock-notice was not merely technical, and the lead opinion's novel extension of the "substantial compliance" doctrine is bad law and bad policy.

The California Supreme Court held long ago that when evidence is illegally seized in violation of knock-notice and the violation is not excused by exigent circumstances, the evidence must be suppressed. (*Duke v. Superior Court* (1969) 1 Cal.3d 314, 325 [82 Cal.Rptr. 348, 461 P.2d 628]

(*Duke*).) That holding survived the adoption of article I, section 28, subdivision (d) of the California Constitution. (*People v. Neer* (1986) 177 Cal.App.3d 991, 997-1001 [223 Cal.Rptr. 555] (*Neer*).)[1] The California Supreme Court has never abrogated *Duke*'s holding. Therefore, we are bound to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 457 [20 Cal.Rptr. 321, 369 P.2d 937].)

The application of the "substantial compliance" doctrine to knock-notice does not mean that *Duke*'s rule of exclusion has been set aside. The courts that have made substantial-compliance findings in knock-notice cases have always been careful to explain that substantial compliance in this context means " '*actual* compliance in respect to the substance essential to every reasonable objective of the [knock-notice] statute,' as distinguished from 'mere technical imperfections of form.' " (*People v. Jacobs* (1987) 43 Cal.3d 472, 483 [233 Cal.Rptr. 323, 729 P.2d 757] (*Jacobs*), italics in original.) The lead opinion claims to be finding nothing different today. In actuality, as I explain in part I B., *post*, the lead opinion's version of "substantial compliance" would excuse almost any conceivable violation of the letter and spirit of knock-notice, provided that it appeared in hindsight no tangible harm to persons or property resulted.

### A

When we asked the parties to brief the question whether the trial court was correct to find a knock-notice violation, defendant cited *Jeter v. Superior Court* (1983) 138 Cal.App.3d 934 [188 Cal.Rptr. 351] (*Jeter*), among other authorities, to support the trial court's finding. As I shall show, it is on point and controlling.

In *Jeter*, five police officers arrived at the defendant's residence at 11:00 a.m. to serve a search warrant. The officers knocked on the front door and announced their presence and purpose. After waiting "a few seconds," the lead officer knocked and yelled again. After another wait of "five or 10 seconds," he turned the handle and pushed open the door. The officers found defendant and another person inside. (*Jeter, supra*, 138 Cal.App.3d at p. 936.)

The Court of Appeal held that the defendant's motion to set aside the information should have been granted because the officers entered forcibly without first giving the occupants "an opportunity to surrender the premises voluntarily" and the defendant did not refuse the officers permission to enter.

---

[1] So far as the concurring justice concludes otherwise, I explain in part II A., *post*, why that conclusion is untenable.

(*Jeter, supra,* 138 Cal.App.3d at p. 937.) The court rejected the People's argument that the officers "could have reasonably inferred a refusal from the failure of anyone to respond to their knock within 20 seconds." (*Ibid.*) Distinguishing cases cited by the People for this proposition (*People v. Gallo* (1981) 127 Cal.App.3d 828 [179 Cal.Rptr. 662]; *People v. Elder* (1976) 63 Cal.App.3d 731 [134 Cal.Rptr. 212]), the court noted that in those cases "the police had first-hand concrete knowledge that someone was in the residence and was awake . . . . With such information it was not unreasonable for the officers in the *Elder* and *Gallo* situations to conclude that a failure to respond to their knocking and announcing of purpose was a refusal of permission to enter. Such situations bear no resemblance—except for the shortness of time —to the case at hand in which *the officers had no information whatsoever upon which to base a belief that they were being refused entry.*" (*Jeter, supra,* 138 Cal.App.3d at p. 937, italics added.)

*Jeter* is on all fours with our case. Here, as in *Jeter,* the officers knocked and announced, heard no response, waited a few seconds, repeated the knock and announcement, waited a few seconds more, then entered without permission—all without ever receiving any information on which to base a belief that they were being refused entry. Indeed, in this case the trial court expressly found, "Given the fact situation in this case, this court would make a finding; that there was no reasonable basis for the police to believe that anyone was present in this home." I would hold that under the rule of *Jeter* the trial court correctly found that the officers' conduct violated the knock-notice rule.[2]

---

[2]The lead opinion asserts that my reliance on *Jeter* is "misplaced." (Lead opn., *ante,* at p. 1209, fn. 7.) I cannot agree.

The lead opinion appears to assert first that *Jeter* has been superseded by later developments in the law, but the lead opinion cites no such developments. The lead opinion says: "The court [in *Jeter*] applied the pre-*Wilson* California rule that a violation of Penal Code section 1531 alone renders the search unreasonable." (Lead opn., *ante,* at p. 1209, fn. 7.) This assertion seems to imply that *Wilson* has somehow abrogated this rule, but the lead opinion fails to explain how *Wilson v. Arkansas* (1995) 514 U.S. 927 [115 S.Ct. 1914, 131 L.Ed.2d 976] did so or could have done so. In fact, that "pre-*Wilson* California rule" rested on the established California view that knock-notice issues were subject to Fourth Amendment reasonableness analysis—a point on which the California courts long anticipated *Wilson,* as the lead opinion notes in part I of its opinion. (*Duke, supra,* 1 Cal.3d at p. 325; *Greven v. Superior Court* (1969) 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432]; *People v. Rosales* (1968) 68 Cal.2d 299, 304-305 [66 Cal.Rptr. 1, 437 P.2d 489]; *People v. Gastelo* (1967) 67 Cal.2d 586, 588-589 [63 Cal.Rptr. 10, 432 P.2d 706].) Police officers' violation of a state knock-notice statute is prima facie grounds to find that the officers' conduct was unreasonable under the Fourth Amendment. Nothing in *Wilson* purports to hold otherwise. Thus, the lead opinion's insinuation that *Jeter* no longer states the law because it applied this "pre-*Wilson* California rule" is unsupported.

The lead opinion also appears to assert that *Jeter* is inapposite or simply wrong because it does not discuss substantial compliance; however, the lead opinion does not explain how

B

The lead opinion finds that the officers' conduct, if technically in violation of knock-notice, is nevertheless excusable under the doctrine of "substantial compliance." The lead opinion errs.

The lead opinion accurately cites the pre-*Wilson* standard for substantial compliance in knock-notice cases: " 'Substantial compliance means " '*actual* compliance in respect to the substance essential to every reasonable objective of the [knock-notice] statute,' as distinguished from 'mere technical imperfections of form.' " ' (*People v. Jacobs*[, *supra*,] 43 Cal.3d 472, 483 . . . ; italics in original.) The essential inquiry is whether under the circumstances the policies underlying the knock-notice requirements were served." (*People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1227 [266 Cal.Rptr. 473] (*Trujillo*). See also *People v. Tacy* (1987) 195 Cal.App.3d 1402, 1415-1416 [241 Cal.Rptr. 400] (*Tacy*).) The lead opinion also correctly acknowledges that in light of *Wilson* the analysis must proceed under the Fourth Amendment standard of reasonableness.

What the lead opinion does *not* do is to cite any decision of the California Supreme Court, either pre- or post-*Wilson*, that holds police officers substantially complied with the knock-notice rule *by failing to wait a reasonable time after knocking and giving notice before making a forcible entry*. Nor do the decisions of the Court of Appeal on which the lead opinion relies state such a proposition. The lead opinion thus stretches the "substantial compliance" doctrine to unprecedented lengths to fit the facts here. Furthermore, the lead opinion's sweeping extension of the doctrine does not serve "the policies underlying the knock-notice requirement" (*Trujillo, supra*, 217 Cal.App.3d at p. 1227); it vitiates them.

substantial compliance could apply to the facts of *Jeter*, and I see no reason why a court must expressly reject every legal theory that is patently inapplicable to the facts. The court was clearly aware of the substantial-compliance doctrine, since both of the decisions it distinguished had relied on that doctrine. (*People v. Gallo, supra*, 127 Cal.App.3d at p. 840; *People v. Elder, supra*, 63 Cal.App.3d at p. 739.) The court merely found impliedly that the facts before it were not close enough to raise a substantial-compliance question. So far as the lead opinion suggests that *Jeter* erred in that respect, it offers no analysis to support this proposition.

The lead opinion asserts that the *Jeter* court "did not consider any . . . factors in assessing reasonableness of the search" other than its finding of a Penal Code section 1531 violation. (Lead opn., *ante*, at p. 1209, fn. 7.) However, the lead opinion does not say what other factors the court should have considered. Thus this assertion, like those above, does not explain why my reliance on *Jeter* is "misplaced."

The lead opinion also asserts that my approach consists of "lining up the prior cases and deciding which one is closest factually" and that this reveals my "unwillingness to confront the legal principles at issue." (Lead opn., *ante*, at p. 1209, fn. 7.) To the assertion that I have found a case that is factually indistinguishable from this one, and that I rely on it, I say without hesitation: mea culpa.

The lead opinion mainly relies on *Trujillo, supra,* 217 Cal.App.3d 1219. Assuming that *Trujillo* is correctly decided, it is readily distinguishable. There was a key fact in *Trujillo* not present in our case: after knocking, the officers heard movement inside the residence. (*Id.* at p. 1224.) That distinction makes all the difference.

The court in *Trujillo* held on the facts presented there that the officers' conduct adequately served the privacy-protection rationale of knock-notice, apparently because the movement the officers heard allowed them to conclude reasonably that the occupant had been made aware of their presence and purpose. Thus, "[w]hile the case is a close one, . . . *the police delayed entry long enough after knocking and announcing themselves and their purpose to protect defendant's reduced expectation of personal privacy . . . .*" (*Trujillo, supra,* 217 Cal.App.3d at p. 1228, italics added.)[3] The court also held that the knock-notice purpose of preventing violence was served because that purpose is accomplished when the announcement is made. (*Trujillo,* at p. 1227.) (The court understandably did not consider the additional purpose behind the knock-notice rule articulated subsequently by the United States Supreme Court as part of the Fourth Amendment reasonableness calculus: the law's abhorrence of the unnecessary " 'destruction or breaking of any house.' " (*Wilson v. Arkansas, supra,* 514 U.S. 927, 931 [115 S.Ct. 1914, 1916, 131 L.Ed.2d 976, 981] (*Wilson*).)

In our case, as in *Jeter* (but not as in *Trujillo*), the officers heard no response to their knocks and announcements. Therefore, *Trujillo*'s main ground for finding substantial compliance is inapposite here. Based on the silence from inside defendant's residence, the officers could not properly conclude that any occupant had received due notice of their presence and purpose. Thus, unlike the officers in *Trujillo,* they did not "delay[] entry long enough" (*Trujillo, supra,* 217 Cal.App.3d at p. 1228) to protect the occupants' reasonable expectation of privacy.[4] In short, *Trujillo* does not stand for the lead opinion's novel proposition that officers may substantially

---

[3]The court's reasoning is not altogether clear on this point. The court acknowledges that the officers could not be sure the movement they heard was that of a human being rather than, say, a dog. (*Trujillo, supra,* 217 Cal.App.3d at pp. 1226-1227.) Nor could they reasonably interpret the fact that the movement was not followed by anything further as an implicit refusal of entry. (*Ibid.*; see *Jeter, supra,* 138 Cal.App.3d at p. 937.)

The court distinguishes *Jeter* on the ground that its facts are not "identical" to those of the case before the court. (*Trujillo, supra,* 217 Cal.App.3d at p. 1226.) However, the court does not explain why a case cannot be apposite to another case unless the two cases' facts are identical. Nor does the court explain which different fact or facts in *Jeter* make it inapposite.

[4]It is unclear whether the lead opinion deems it significant that the officers in *Trujillo* and in our case waited about the same length of time before entering: the lead opinion cites the officers' 15-to-20-second delay in this case as though it were a material fact, but without explaining why the exact length of time matters. (See lead opn., *ante,* at p. 1207.) In any

comply with knock-notice by failing to wait a reasonable length of time under the circumstances before entering.

*Tacy, supra,* 195 Cal.App.3d 1402, the only other substantial-compliance case the lead opinion discusses in any detail, is even less helpful to its position. *Tacy*'s facts bear no resemblance to those of our case. Police officers arriving at an apartment to execute a search warrant found the front door open, saw an occupant of the residence through a screen door, and communicated their intent and their authority to search to that occupant before entering. (*Id.* at pp. 1406-1407.) On those facts, exact compliance with every element of the knock-notice statute was not necessary in order to avoid frustrating its underlying purposes. (*Id.* at p. 1421.) Here, the officers did not find the front door open, did not see any occupant inside before entering, and did not have any reason to believe that their knock and announcement had succeeded in communicating their presence and purpose to any occupant. *Tacy* is simply inapposite.

Turning to our case, the lead opinion finds substantial compliance as follows: "Under the facts of this case, none of these policy concerns is implicated. The officers approached the front door of the residence and knocked and announced their presence and purpose twice. They waited 15 to 20 seconds before proceeding further. They turned the handle on the un-locked door and opened it slightly before opening it all the way and entering. The officers did not rush the occupant or destroy property. *There is nothing in the record to suggest either the occupant or the officers were ever at risk.*" (Lead opn., *ante,* at p. 1211, italics added.) The lead opinion's finding is unpersuasive. The only part of the quoted paragraph that hints at an argument is the last sentence. That sentence is remarkable for two things: its unexamined reliance on hindsight, and its failure to explain how knowledge gained through hindsight can excuse knock-notice violations.

"Substantial compliance," like "exigent circumstances," is a court-made doctrine applied in retrospect to decide whether, in a particular set of circumstances, police officers' failure to observe knock-notice protocol is excusable. It does not follow, however, that the courts may rely on after-the-fact information to make this call. It is settled that we must review claims of exigent circumstances based on what the police knew or reasonably believed when they entered the suspect's residence, not on what later investigation may disclose. (*People v. Ramey* (1976) 16 Cal.3d 263, 275 [127 Cal.Rptr.

event, the court in *Trujillo* refused to hold that any particular length of time was sufficient to wait for purposes of compliance with knock-notice as a matter of law, reasoning that to adopt such a bright-line rule would "trivialize the policies behind the knock-notice rules." (*Trujillo, supra,* 217 Cal.App.3d at p. 1225.)

629, 545 P.2d 1333]; accord, *People v. Williams* (1989) 48 Cal.3d 1112, 1138 [259 Cal.Rptr. 473, 774 P.2d 146].) The lead opinion gives no reason why a different rule should apply to the question whether police conduct served or frustrated the purposes behind the knock-notice requirement. Here, as in the typical exigent circumstances situation (though the People have never claimed that this is an exigent circumstances case), the police opened the door with no idea what might await them inside.

As the lead opinion notes, one of the main purposes of the knock-notice rule is to protect both occupants of the residence and the police from the danger to which an unannounced forcible entry might expose them. (See, e.g., *Jacobs, supra,* 43 Cal.3d at p. 483.) Reasoning backward, the lead opinion asserts that the officers' conduct in this case did not frustrate this objective because no one was actually harmed. But the officers could not possibly have had a reasonable belief that their forcible entry would lead to such a peaceful outcome. They had no way of knowing that the only person inside would turn out to be unarmed, unresisting, and unaware of any criminal activity on the premises. This fortuity cannot turn the officers' noncompliance with knock-notice into substantial compliance.

Worse yet, the lead opinion's hindsight-makes-right rule would yield the same result if the police had simply battered down defendant's door unannounced, provided no one was hurt. On the lead opinion's reasoning, if no death or injury occurs, ipso facto whatever the police did substantially complied with the knock-notice objective of protecting police and occupant safety. A "substantial compliance" rule that sweeps so broadly would sweep knock-notice away.[5]

In the knock-notice context, "[s]ubstantial compliance means ' "actual compliance in respect to the substance essential to *every* reasonable objective

---

[5]This flaw gapes just as widely in the concurrence's "inevitable discovery" analysis, at least as to all cases where the police have a valid search warrant. (See pt. II, *post.*)

The lead opinion protests that my characterization of its rule as post hoc analysis and " 'hindsight-makes-right' " is "simply untrue." (Lead opn., *ante,* at p. 1212, fn. 8.) The lead opinion then proceeds to prove it true. Reciting the facts once more, the lead opinion adds the refinement that "the officers' conduct leading up to the entry . . . was not threatening . . . ." (*Ibid.*) In other words, the lead opinion persists in assessing the facts either from the supposed viewpoint of some hypothetical occupant of the residence about whose supposed presence, character, and knowledge of the officers' actions they could have known nothing during the time "leading up to the entry," or else from the viewpoint of a trier of fact who knew in hindsight that the actual occupant did not appear to have felt threatened once the officers entered. The lead opinion offers no reasoned response to my point that this sort of hindsight cannot be the standard for determining whether the officers' actions were objectively reasonable (i.e., substantially complied with knock-notice). Nor does the lead opinion explain why its analysis would not logically lead to the conclusion that even conduct grossly in violation of knock-notice would display "actual compliance" (*Jacobs, supra,* 43 Cal.3d at p. 843) with the objectives of knock-notice, provided this conduct did not result in tangible harm to persons or property.

of the statute" . . . .' " (*Jacobs, supra*, 43 Cal.3d at p. 483, italics added and omitted, citations omitted.) Thus, at a minimum, substantial compliance must mean actual compliance with the objective of protecting officers' and residents' safety. The lead opinion's analysis would excuse the most egregious and reckless knock-notice violation, however great its objective risk of endangering both officers and residents, provided that it does not actually result in death or injury. The lead opinion would thus turn the narrow "substantial compliance" knock-notice rule into an all-purpose exception to the knock-notice requirement. I cannot join the lead opinion in its evisceration of the knock-notice law.

Finally, the lead opinion's analysis is unacceptable because it will send a confusing signal to police officers who must apply the knock-notice rules on the street. The lead opinion sends the following message to police officers: you are supposed to wait a reasonable amount of time after knocking and announcing your presence before you enter a residence. But if you do not wait a reasonable amount of time, you may still be okay. The police may therefore act unreasonably without sanction.

I would not inject this uncertain "fudge factor" into the Fourth Amendment reasonableness analysis. I would tell the police that if they do not wait a reasonable amount of time before entering, they have acted unreasonably within the meaning of the Fourth Amendment and the evidence will be suppressed.

For these reasons, then, I cannot agree with the lead opinion's conclusion that the knock-notice violation in this case is saved by the doctrine of substantial compliance.

## II

The learned concurring justice (with whom I have joined in many a prior opinion) proposes an additional ground for reaching the lead opinion's result: assuming a knock-notice violation, he would treat it as ultimately trivial because the evidence comes in anyhow under the "inevitable discovery" exception to the exclusionary rule. He reasons that since the police had a valid search warrant, if they had executed the warrant without violating knock-notice they would "inevitably" have discovered the evidence they seized; therefore, because they could have obtained it by doing things right, it does not matter what they did wrong. The concurring justice opines that this result is not merely desirable, but compelled by article I, section 28, subdivision (d) of the California Constitution (hereafter article I, section 28(d)).

With respect, I cannot agree with this analysis. I shall first show that the concurring justice's claim of constitutional compulsion lacks merit. I shall

then explain why the application of "inevitable discovery" to knock-notice would gut the knock-notice requirement as effectively as would the lead opinion's overbroad "substantial compliance" rule.

A

Under article I, section 28(d), the California courts may exclude relevant evidence in criminal proceedings only if such exclusion is compelled by the United States Constitution, *as interpreted by the United States Supreme Court.* Article I, section 28(d) gives the holdings and dicta of lower federal courts no more binding authority over us in this context than they have in any other—that is to say, none. (*In re Lance W.* (1985) 37 Cal.3d 873, 884-890 [210 Cal.Rptr. 631, 694 P.2d 744]; *Neer, supra,* 177 Cal.App.3d at pp. 1000-1001. Accord, *Trujillo, supra,* 217 Cal.App.3d at p. 1225; *Tacy, supra,* 195 Cal.App.3d at pp. 1410-1414.)

Although one would not know it from reading the concurrence, the last time the United States Supreme Court expressly spoke to the question of the appropriate remedy for a knock-notice violation *it held that, if the violation is not excused by exigent circumstances, the illegally seized evidence must be excluded.* (*Miller v. United States* (1958) 357 U.S. 301, 309, 314 [78 S.Ct. 1190, 1195-1196, 1198, 2 L.Ed.2d 1332, 1338, 1341] (*Miller*). Accord, *Sabbath v. United States* (1968) 391 U.S. 585, 586, 591 & fn. 8 [88 S.Ct. 1755, 1756-1759, 20 L.Ed.2d 828, 834] (*Sabbath*).) In the 42 years since the high court decided *Miller* and the 32 years since it decided *Sabbath,* it has never expressly overruled or limited these holdings. The short answer to the concurring justice's argument, therefore, is that article I, section 28(d) compels us to follow *Miller* and *Sabbath* until the high court tells us otherwise. (See *In re Lance W., supra,* 37 Cal.3d at pp. 884-890; *Trujillo, supra,* 217 Cal.App.3d at p. 1225; *Tacy, supra,* 195 Cal.App.3d at pp. 1410-1414; *Neer, supra,* 177 Cal.App.3d at pp. 1000-1001.) That is also the correct answer.

The concurring justice appears to conclude, however, that the high court has *impliedly* overruled *Miller* and *Sabbath* as to the required remedy for knock-notice violations by subsequently adopting the "inevitable discovery" exception to the exclusionary rule, which *Miller* and *Sabbath* supposedly could not have considered. (*Nix v. Williams* (1984) 467 U.S. 431, 440-448 [104 S.Ct. 2501, 2507-2511, 81 L.Ed.2d 377, 385-390] (*Nix*).)[6] There are

---

[6]It is difficult to tell whether the concurring justice has actually so concluded, since he does not mention *Miller* or *Sabbath.*

The People have also argued for the applicability of the "independent source" exception to the exclusionary rule, as adopted in *Segura v. United States* (1984) 468 U.S. 796 [104 S.Ct.

three problems with this conclusion. First, the concurring justice cites no authority saying that article I, section 28(d) entitles us to hold that a high court decision directly on point has been overruled sub silentio. Second, *Nix* does not say a word about knock-notice, *Miller,* or *Sabbath;* thus it is not authority either for the proposition that "inevitable discovery" applies to knock-notice or for the proposition that *Miller* and *Sabbath* no longer state the law. (*Hart v. Burnett* (1860) 15 Cal. 530, 598.)[7] Third, the high court has allowed 16 years to elapse since it decided *Nix* without ever applying *Nix*'s holding to knock-notice—a silence which is inexplicable from the concurring justice's perspective.

The concurring justice cites (but does not quote) footnote 4 of *Wilson, supra,* 514 U.S. 927 [115 S.Ct. 1914, 131 L.Ed.2d 976], where the high court for the first time mentioned *Nix* and knock-notice in the same breath, as support for his position. If anything, it is the opposite. There, the high court said: "Respondent and its *amici* also ask us to affirm the denial of petitioner's suppression motion on an alternative ground: that exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement. *Analogizing to* the 'independent source' doctrine applied in *Segura*[, *supra*], 468 U.S. 796, 805, 813-816 [104 S.Ct. at pp. 3385-3386, 3389-3391, 82 L.Ed.2d 599] . . . , and *the 'inevitable discovery' rule adopted in Nix*[, *supra*], 467 U.S. 431, 440-448 [104 S.Ct. at pp. 2507-2511, 81 L.Ed.2d 377] . . . , respondent and its *amici* argue that any evidence seized after an unreasonable, unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation. Because this remedial issue was not addressed by the court below and is not within the narrow question on which we granted certiorari, we decline to address these arguments." (*Wilson,*

3380, 82 L.Ed.2d 599]. Since the concurring justice does not discuss this doctrine, I also will not do so. However, I note that its application to knock-notice is impermissible in California under *Miller* and *Sabbath* for the reasons stated above.

[7]The argument might be made that the high court had no occasion to discuss knock-notice in *Nix* because it was addressing constitutional issues and it had not yet held that knock-notice is such an issue. (*Nix, supra,* 467 U.S. at pp. 440-448 [104 S.Ct. at pp. 2507-2511, 81 L.Ed.2d at pp. 385-390]; see *Wilson, supra,* 514 U.S. at p. 934, fn. 3 [115 S.Ct. at p. 1918, 131 L.Ed.2d at p. 982].) The argument would fail. If exceptions to the exclusionary rule apply even where the rule protects interests that rise to the level of constitutional dignity, a fortiori they must apply in contexts where the interests to be protected do not rise to that level.

Moreover, the high court in *Nix* did not address only the constitutional issue directly before it, which implicated the Sixth Amendment to the United States Constitution: it also pointed out that its analysis applied equally to issues arising under the Fourth and Fifth Amendments. (*Nix, supra,* 467 U.S. at pp. 441-442 [104 S.Ct. at pp. 2507-2508, 81 L.Ed.2d at pp. 385-386].) This renders *Nix*'s silence as to knock-notice, *Miller,* and *Sabbath* all the more baffling, if the high court truly intended *Nix* to sweep as broadly as the concurring justice would have it do.

*supra,* 514 U.S. at p. 937, fn. 4 [115 S.Ct. at p. 1919, 131 L.Ed.2d at p. 984], italics added.)[8] Thus, the high court flatly refused to take the opportunity offered by the state to overrule *Miller* and *Sabbath.* Moreover, in its paraphrase of the state's argument, the high court characterized it as reasoning by "analog[y]," not as an assertion that *Nix* was on point and controlling. Nothing in footnote 4 of *Wilson* even implies that premise, let alone the conclusion, that article I, section 28(d) forces us to read *Nix* as impliedly overruling *Miller* and *Sabbath.*

In short, unlike the concurring justice, I conclude that article I, section 28(d) does not permit us, let alone compel us, to declare on-point decisions of the United States Supreme Court no longer the law until and unless that court says so. It has not said so as to *Miller* and *Sabbath.* Therefore, I would follow those decisions under compulsion of the California Constitution.

B

Assuming arguendo, however—despite the compulsion of *Miller, Sabbath,* and article I, section 28(d)—that this court may consider the concurring justice's "inevitable discovery" argument on the merits, I shall now demonstrate why it should be rejected. Like the lead opinion's version of "substantial compliance," its effect would be to kill the knock-notice rule, at least in every case where the police have a valid search warrant before entering a suspect's residence.

As I have noted in part I *ante,* it has been generally undisputed until now in California that evidence seized in violation of knock-notice must be suppressed. (*Duke, supra,* 1 Cal.3d at p. 325; *Trujillo, supra,* 217 Cal.App.3d at p. 1225; *Tacy, supra,* 195 Cal.App.3d at p. 1410; *People v, Neer, supra,* 177 Cal.App.3d at pp. 997-1001; but see *People v. Lamas* (1991) 229 Cal.App.3d 560 [282 Cal.Rptr. 296].)[9] However, courts of other jurisdictions (not constrained by any rule analogous to art. I, § 28(d)) have often considered claims that the "independent source" doctrine, the "inevitable

---

[8]Although I do not presume to read between the lines of high court decisions, I note that it was within the high court's discretion as to how it chose to word its grant of certiorari, and the high court is free to request briefing from the parties on purely legal issues even if they were not addressed below.

[9]In *People v. Lamas, supra,* 229 Cal.App.3d 560, the court held that inevitable discovery applied where evidence had been seized in a warrantless search that violated knock-notice and the officers later obtained a valid search warrant. (*Id.* at pp. 563-565, 568-570.) The court noted, however, that it was not considering the situation where a knock-notice violation occurs in the execution of a warrant. (*Id.* at p. 570, fn. 1.) The court did not discuss or even cite the California authority holding suppression mandatory in knock-notice violation cases. (*Duke, supra,* 1 Cal.3d at p. 325; *Neer, supra,* 177 Cal.App.3d at pp. 999-1001.)

discovery" doctrine, or both, should permit the admission of evidence seized after entries in violation of knock-notice. Most jurisdictions have rejected these claims. (*U.S. v. Marts* (8th Cir. 1993) 986 F.2d 1216, 1219; *U.S. v. Shugart* (E.D.Tex. 1995) 889 F.Supp. 963, 976-977, affd. 117 F.3d 838 (5th Cir. 1997), cert. den. 522 U.S. 976 [139 L.Ed.2d 333] (*Shugart*); *State v. Martinez* (Minn.Ct.App. 1998) 579 N.W.2d 144, 148; *Com. v. Rudisill* (1993) 424 Pa.Super. 313, 316-318 [622 A.2d 397]; *Com. v. Gomes* (1990) 408 Mass. 43, 44-47 [556 N.E.2d 100, 101-103]; but see *U.S. v. Hidalgo* (D.Mass. 1990) 747 F.Supp. 818; *People v. Stevens* (1999) 460 Mich. 626 [597 N.W.2d 53] (*Stevens*).) The latest sister state court to reject these arguments is the Arkansas Supreme Court in *Mazepink v. State* (1999) 336 Ark. 171 [987 S.W.2d 648], certiorari denied *sub nom. Arkansas v. Mazepink* (1999) 528 U.S. 927 [120 S.Ct. 321, 145 L.Ed.2d 250] (*Mazepink*), as follows:

"The State urges us to adopt a remedy other than suppression of the evidence pursuant to the Fourth Amendment exclusionary rule. The State asserts that because the purpose of the exclusionary rule is to deter police misconduct, it would be inappropriate to exclude the evidence in this case because the decision to act illegally (not to knock and announce before forcing entry) was not motivated by a desire to gather evidence by any means other than a search warrant issued upon probable cause. We agree with Appellants, however, that exclusion is the only practical remedy for such police misconduct." (*Mazepink, supra,* 987 S.W.2d at p. 656.)

The court first noted federal and state authorities that had found exclusion required where knock-notice was violated and no exigent circumstances excused compliance, including *Miller, supra,* 347 U.S. 310 [78 S.Ct. 1190, 2 L.Ed.2d 1332]; *U.S. v. Moore* (10th Cir. 1996) 91 F.3d 96; *U.S. v. Bates* (6th Cir. 1996) 84 F.3d 790; *U.S. v. Becker* (9th Cir. 1994) 23 F.3d 1537; *U.S. v. Knapp* (10th Cir. 1993) 1 F.3d 1026; and *People v. Polidori* (1991) 190 Mich.App. 673 [476 N.W.2d 482], certiorari denied (1992) 506 U.S. 905 [113 S.Ct. 298, 121 L.Ed.2d 222]. After finding that no exigent circumstances excusing noncompliance with knock-notice existed in the case at bench, the court turned to the state's "independent grounds" and "inevitable discovery" arguments:

"We reject the State's argument that exclusion of the evidence is not appropriate because the evidence would have been inevitably discovered by legal means (the search warrant) despite the illegal entry. We also reject the State's argument that there was an independent source for the evidence, namely the previously procured search warrant. These same arguments were

offered by the government in *Marts*, [*supra*,] 986 F.2d 1216, and were rejected by the Eighth Circuit.

 *"In Marts, the government argued that even if the officers had waited an additional period of time (longer than five seconds), the exact same search would have been conducted and the exact same evidence would have been seized. Nonetheless, the court concluded that suppression of the evidence was mandated, stating that '[l]ongstanding constitutional principles regarding unlawful search and seizure bar the government's use of the fruits of an unlawful search simply because the officers "would have found it anyway."'* Id. at 1219 (footnote omitted). The *Marts* court also rejected the theory advanced by the dissent that the evidence should be admissible under the independent-source rule. The dissenting judge relied on *Segura v. United States*, [*supra*,] 468 U.S. 796 . . . , as does the State in this case. Although the court initially rejected application of the independent-source rule on the ground that it was not raised below, it addressed the merits of the theory: 'Under the dissent's application of the independent source rule, the knock and announce rule codified under [18 U.S.C.] § 3109 would be meaningless since an officer could obviate illegal entry in every instance simply by looking to the information used to obtain the warrant. Under the dissent's reasoning, officers, in executing a valid search warrant, could break in doors of private homes without sanction.' *Marts*, 986 F.2d at 1220. The court then distinguished the facts of *Segura*, where the police entered the apartment without a warrant in order to secure it until a warrant could be obtained with previously known information. Although the initial entry was invalid, the search itself, pursuant to the subsequently obtained warrant, was determined to be reasonable because it was based on an independent source that provided probable cause for issuance of the warrant. The Eighth Circuit concluded: 'The significant factor in *Segura* is that the search warrant and the evidence seized under it were totally unrelated to the illegal entry. In the present case the search warrant, although legally obtained, was executed in violation of [18 U.S.C.] § 3109, and its execution was directly connected to the illegal entry.' *Id.* . . . We find that reasoning sound and directly applicable to the facts of this case, where the search warrant, although based on probable cause and otherwise legally obtained, was executed in violation of the Fourth Amendment 'knock and announce' rule, and its execution was directly connected to the illegal entry. We thus conclude that exclusion of the evidence is the appropriate remedy for the officers' misconduct in this case. We concur with the Eighth Circuit that were we to hold otherwise, the 'knock and announce' rule would be rendered meaningless. . . ." (*Mazepink, supra*, 987 S.W.2d at pp. 657-658, italics added and omitted.)

 In a decision focusing more squarely on "inevitable discovery," a federal court explained even more compellingly why importing that doctrine (like

the "independent source" doctrine) into the knock-notice context would effectively kill the knock-notice rule as to cases involving valid search warrants: "[I]t must be noted that application of the inevitable discovery doctrine to evidence seized after a clear violation of the [federal] 'knock and announce' statute would completely viscerate the fundamental privacy and safety interests the statute seeks to secure. *If the exception were to apply, officers could obviate their obligation to provide notice of their authority and purpose prior to entering a person's household whenever they had a valid warrant authorizing the search of the home. In those situations, officers would know their misconduct would have no unfavorable consequences, and simply stated, the exception would swallow the rule. Thus, [the federal statute], in effect, would be an empty vessel, as violations of the statute would not result in any sanction.* [Citation.] Such a result is untenable, especially in light of the 'knock and announce' rule's perdurance." (*Shugart, supra,* 889 F.Supp. at p. 977, italics added.)

I acknowledge that a majority of the Michigan Supreme Court, in a decision even more recent than *Mazepink,* held that "inevitable discovery" applies to knock-notice cases. (*Stevens, supra,* 597 N.W.2d 53 (maj. opn. of Brickley, J.).)[10] The concurring justice finds the majority opinion in *Stevens* persuasive. I do not. After discussing the inevitable-discovery doctrine in the abstract, the majority merely asserts that the evidence in the case before it would inevitably have been discovered because the police had a valid search warrant. (*Id.* at pp. 57-64.) The majority does not consider the logical consequence of this line of reasoning, as explained in *Mazepink, supra,* 987 S.W.2d at pages 657-658, and *Shugart, supra,* 889 F.Supp. at page 977: the vitiation of the knock-notice rule in any case where a valid search warrant existed (or could have been obtained).[11]

There is yet another reason to reject the concurring justice's argument: it would violate a clear mandate of the United States Supreme Court. In a

---

[10]The fact, noted by the concurring justice, that the Michigan court has continued to follow its own holding in *Stevens* is neither surprising nor persuasive. State courts do not often reverse themselves in short order on constitutional issues if not compelled to do so by a higher authority (or if their membership is not radically changed by the outcome of an election).

[11]Though acknowledging the federal precedents to the contrary, the majority finds more persuasive the first half of the following "dicta" from a recent Seventh Circuit decision: ". . . . *It is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant*; an occupant would hardly be allowed to contend that, had the officers announced their presence and waited longer to enter, he would have had time to destroy the evidence. . . ." (*U.S. v. Jones* (7th Cir. 1998) 149 F.3d 715, 716-717 (*Jones*) [admitted dictum because unlawful entry causally unrelated to seizure of evidence], quoted in part in *Stevens, supra,* 597 N.W.2d at p. 62, fn. 6. I italicize the part of the dictum quoted by the majority.) I am not so impressed by this dictum. In any case where the police reasonably believe that a suspect could destroy evidence if not immediately forestalled, they can enter without a warrant due to exigent circumstances. Thus there is no

decision rendered after *Wilson, supra,* 514 U.S. 927, the high court held that the Fourth Amendment does not permit blanket exceptions to knock-notice for any category of cases because the courts must perform the constitutionally mandated reasonableness inquiry on the particular facts of each case. (*Richards v. Wisconsin* (1997) 520 U.S. 385, 390-395 [117 S.Ct. 1416, 1419-1422, 137 L.Ed.2d 615, 622-624] (*Richards*) [no blanket exception for entries into suspected drug dealers' residences, despite claim that such cases always present exigent circumstances].) To admit evidence obtained illegally in violation of knock-notice in any case where the police had a valid search warrant, on the premise that such evidence would always "inevitably" have been discovered by executing the warrant, would in effect create a blanket exception to knock-notice for all cases involving valid search warrants (as *Shugart* anticipated). This is exactly what the high court has said we may not do. (See *Richards, supra,* 520 U.S. at pp. 390-395 [117 S.Ct. at pp. 1419-1422, 137 L.Ed.2d at pp. 622-624]; *Stevens, supra,* 597 N.W.2d at pp. 70-71 (dis. opn. of Cavanagh, J.); *Mazepink, supra,* 987 S.W.2d at pp. 657-658.)

The concurring justice fails to address *Richards* directly. However, in response to the argument outlined above—that applying "inevitable discovery" to knock-notice would destroy the knock-notice rule in all cases involving valid search warrants—the concurring justice asserts: "The rule stands; only the remedy differs." (Conc. opn., *ante,* at p. 1214.) To the extent this observation is meant to answer the high court's concerns in *Richards,* it fails. The concurring justice ignores the reality that an unenforceable rule—one whose violation has no adverse consequences for the violator—is in effect no rule at all.

The concurring justice may mean to imply that knock-notice violations in search warrant cases would still have adverse consequences for the state, despite the automatic admission of the illegally seized evidence in every such case as "inevitably discovered." If so, he fails to spell out what these consequences would be, or how any "remedy" other than exclusion could be sufficiently onerous to deter the evil—the illegal seizure of evidence in

---

need to resort to "inevitable discovery" to foreclose the sort of defense argument posited in *Jones.* (*Stevens, supra,* 597 N.W.2d at p. 67, fn. 12 (dis. opn. of Cavanagh, J.).)

In the later-decided case, *U.S. v. Stefonek* (7th Cir. 1999) 179 F.3d 1030, cited by the concurring justice (conc. opn., *ante,* at p. 1216), a panel of the Seventh Circuit which included the author of *Jones, supra,* expounded at greater length—also in dictum—on the *Jones* dictum. (179 F.3d at p. 1035.) Thus, these decisions demonstrate only that a small group of justices on one federal circuit agrees with itself in dictum on this issue. (Of course, even if these dicta were holdings, they would have no binding authority on us. (*Neer, supra,* 177 Cal.App.3d at pp. 1000-1001.))

violation of knock-notice—that the exclusionary rule guards against. (Of course, the concurring justice goes on to assert that he is not required to spell out the alternatives to exclusion because article I, section 28(d) prevents us from "favor[ing] the exclusionary remedy over other remedies." (Conc. opn., *ante*, at p. 1214.) As I have explained in part II.A. *ante*, of this dissent, in the knock-notice context article I, section 28(d) does no such thing.)[12]

"The exclusionary rule serves several salutary purposes, but the United States Supreme Court 'has stressed that the "prime purpose" of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." ' . . ." (*In re Tyrell J.* (1994) 8 Cal.4th 68, 89 [32 Cal.Rptr.2d 33, 876 P.2d 519], citations omitted.) It might be suggested, as do the concurring justice and the majority in *Stevens,* that the exclusionary rule is not needed to deter the unlawful police conduct at issue because the police know that they may face other adverse consequences. (*Stevens, supra,* 597 N.W.2d at pp. 61-62. See *Nix, supra,* 467 U.S. at p. 446 [104 S.Ct. at p. 2510, 81 L.Ed.2d at p. 389].) But neither the *Stevens* majority nor the concurring justice offers evidence that any hypothetical alternatives to exclusion have actually deterred police misconduct, or any scenario for how they might do so in practice. I am unwilling to rest the continued vitality of Fourth Amendment safeguards on such a speculative basis.

## CONCLUSION

For all the reasons stated above, I cannot join in the lead opinion's result on any theory proposed by either the lead opinion or the concurring justice.

---

[12]Our Supreme Court has recently held that "inevitable discovery" did not justify the admission into evidence of a stolen car seized by the police after a warrantless entry into a garage attached to a residence, even though the police had already seen the car in plain view from outside the garage and identified it as stolen. (*People v. Robles* (2000) 23 Cal.4th 789, 793-794, 800-801 [97 Cal.Rptr.2d 914, 3 P.3d 311] (*Robles*).) The court also noted that the People had conceded "inevitable discovery" would not justify the warrantless entry of a residence to seize contraband already seen in plain view from outside; the court did not suggest that the People's concession was improvident. (*Id.* at p. 801.)

The court in *Robles* had no occasion to consider the application of "inevitable discovery" to knock-notice or to entries made pursuant to search warrants. However, the court's holding at the least shows a prudent wariness about the doctrine's potential breadth, far different from the expansive approach of my concurring colleague. The court instead could have speculated counterfactually that if the police had not chosen to enter the garage without a warrant (or exigent circumstances) they would "inevitably" have decided to get a warrant, "inevitably" entered with the warrant, and "inevitably" seized the evidence lawfully. Each of these "inevitabilities" is as "inevitable" as any of the others, once one starts down that road.

I would reverse and remand the matter to the trial court with directions to grant defendant's motion to suppress the illegally seized evidence.

Appellant's petition for review by the Supreme Court was denied January 17, 2001. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.