[Civ. No. 32991. First Dist., Div. One. Oct. 10, 1973.]

ANNIE BROWN, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

540

## COUNSEL

Claude O. Allen for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Derald E. Granberg, Gloria F. DeHart and Alvin J. Knudson, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**ELKINGTON, J.**—We issued an alternative writ of prohibition to inquire into the validity of a search which produced evidence essential to a successful prosecution of petitioner Annie Brown on a narcotics charge. The questions presented relate to police compliance with Penal Code section 1531 (one of the so-called "knock and notice" statutes), and an alleged search of petitioner, an occupant of the subject premises.

The superior court had denied motions to dismiss the charge (see Pen. Code, § 995), and to suppress the subject evidence (see Pen. Code, § 1538.5). Our inquiry is not how we, ourselves, would have determined the motions, but whether there was substantial evidence in support of the superior court's rulings. Under similar factual issues it was said in *People v. Barthel,* 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290], "[W]e are required to assume, in the light most favorable to the judgment, the existence of every fact including all inferences which the trial court could have reasonably deduced from the evidence." (And see *Badillo* v. *Superior Court,* 46 Cal.2d 269, 271-272 [294 P.2d 23]; *People* v. *Murray,* 21 Cal.App.3d 864, 867 [99 Cal.Rptr. 55]; *Crueger* v. *Superior Court,* 7 Cal. App.3d 147, 152 [86 Cal.Rptr. 555].)

Following the substantial evidence rule we state the facts in a light most supportive of the superior court's rulings, and as they were presumably found to be true by that court.

Police officers, obeying the command of a search warrant, went to apartment A of 2311 - 21st Avenue, Oakland. The subject of the warrant was narcotics; it called for a search of the apartment and its occupant Lawrence Brown (the husband of petitioner), who had been "arrested a

lot of times," and who was then according to reliable police information dealing in heroin and cocaine. The apartment with its same occupants had, to the officers' knowledge, been the subject of another judicially authorized search three years before at which time several handguns, a blackjack (see Pen. Code, § 12020), and narcotics were found. The police also had information that Lawrence Brown customarily carried a gun on his person. The building, containing four apartments, was recessed about 30 feet beyond a chain wire fence which had an open gate through which the officers entered. The windows of apartment A faced the policemen as they passed through the gate. Traversing the area between the gate and the building they observed two male persons, one a juvenile, run from apartment A around toward the back of the building. A moment later they saw, at the apartment's window, a man's face which quickly disappeared. At this point the officer in charge "was concerned for [his] safety and the safety of [his] fellow officers and also for the safety of the persons inside." He was also concerned with the possible "destruction of contraband."

As the officers came to the door of the apartment they heard running footsteps within. One of the officers knocked on the door, announced that he "was a police officer, to open the door, that [he] had a search warrant." The officers then waited "three to five seconds" and when the door was not opened forced their way into the house and commenced the search. Petitioner Annie Brown, an occupant, was holding a baby. During the course of the search one of the officers observed her attempting to place a crumpled brown paper bag inside the baby's diapers. Believing it to contain narcotics, the officer seized the bag; it contained the heroin, the seizure of which was the subject of the motions in the superior court.

I. Petitioner's first contention is that the police officers violated section 1531 of the Penal Code. ■ This statute, and Penal Code section 844 dealing with entries for the purpose of effecting an arrest, are subject to similar construction. (*People* v. *Peterson,* 9 Cal.App.3d 627, 631 [88 Cal. Rptr. 597]; see *People* v. *Garber,* 275 Cal.App.2d 119, 131 [80 Cal.Rptr. 214] [cert. den. 402 U.S. 981 (29 L.Ed.2d 146, 91 S.Ct. 1643)].)

Section 1531 provides that a police officer executing a search warrant "may break open any outer or inner door or window of a house, . . . . to execute the warrant, if, *after notice of his authority and purpose,* he is refused admittance." (Italics added.) Petitioner's contention is not that the officers failed to give notice of their "authority and purpose," but instead, that breaking the outer door to gain entry from three to five seconds after that notice was given, was not a substantial compliance with the statute.

We agree. ▮ A forced entry within five seconds of the notice of "authority and purpose" may not reasonably be considered substantial compliance with section 1531. But another question remains, i.e., whether under the circumstances full compliance was excused.

It is consistently held that failure to comply with sections 1531 and 844 does not compel application of the exclusionary rule " 'if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence.' " (*People* v. *Dumas,* 9 Cal.3d 871, 877 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Tribble,* 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; *People* v. *Bradley,* 1 Cal.3d 80, 88 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Gastelo,* 67 Cal.2d 586, 587-588 [63 Cal.Rptr. 10, 432 P.2d 706]; *People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6] [cert. den. 352 U.S. 858 (1 L.Ed.2d 65, 77 S.Ct. 81)].)

The purpose of the statutes is also an important consideration. In addition to protection of the privacy of the householder, a principal purpose is to prevent the sudden invasion of a home without warning which carries with it danger that through misunderstanding and misinterpretation officer and citizen may be seriously injured or even killed. (See *Duke* v. *Superior Court,* 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628].) Strict compliance is more readily excused where the police in good faith believe that their presence and purpose to enter is already known to the occupants. (*People* v. *Rosales,* 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Thornton,* 8 Cal.App.3d 741, 745 [87 Cal.Rptr. 535]; *People* v. *Boone,* 2 Cal.App.3d 503, 506 [82 Cal.Rptr. 566]; *People* v. *Vasquez,* 1 Cal.App.3d 769, 773-774 [82 Cal.Rptr. 131] [cert. den. 398 U.S. 938 (26 L.Ed.2d 270, 90 S.Ct. 1840)].)

Also apposite is *People* v. *Dumas, supra,* 9 Cal.3d 871, 879. There the court said: "[T]he police had reliable information that defendant not only possessed weapons but habitually answered the door armed with a firearm. They could reasonably infer from this activity that a substantial possibility existed he would employ deadly force in order to prevent his apprehension. As the officers approached the location to be searched, they became aware of no further circumstances that would defeat this inference. They could therefore reasonably conclude at the time of entry that they were faced with an emergency and that compliance with the announcement requirements would substantially increase their peril. On these facts we hold that the officers' failure to comply with section 1531 does not give rise to an application of the exclusionary rule."

In the case at bench the officers had information that Lawrence Brown customarily carried a gun on his person. Previously when his apartment was searched several handguns and a blackjack were found. This and other evidence justified the officers' expressed concern for their safety. Obviously the policemen had been observed as they entered the building's front yard. This increased the probability that the narcotics believed to be on the premises would be destroyed before an entry could be effected. The probability was heightened (as we think also was the probability of violence) by the running footsteps heard as the police approached the apartment's door. Certainly the occupants with knowledge of the presence of heroin, and of the previous search and the many previous arrests of Brown, were aware of the presence and purpose of the police even before the announcement at the front door. And the announcement, three to five seconds before the entry, that police officers with a search warrant were at the door further alleviated the probability of misunderstanding that persons other than law enforcement officers were invading the premises.

From all of these circumstances, and under the authority we have pointed out, the superior court could reasonably conclude, as we must presume it did, that strict compliance with Penal Code section 1531 was excused.

II. No merit is seen in the contention that "The search of the person of Annie Brown was illegal." There was no search of her person since the brown bag was in plain sight of the officers. (See *People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665].) It was therefore subject to examination and seizure pursuant to the search warrant.

III. Nor is petitioner's final contention valid. Here she urges that the search warrant was legally unauthorized, since it was issued nine days after the police had the information on which it was based.

It has been held that information 18 days old (*People* v. *Scott,* 259 Cal. App.2d 268, 277-278 [66 Cal.Rptr. 257]), 15 days old (*People* v. *Wilson,* 268 Cal.App.2d 581, 589 [74 Cal.Rptr. 131]), and, as here, nine days old (*People* v. *Sheridan,* 2 Cal.App.3d 483, 490-491 [82 Cal.Rptr. 695]) was properly supportive of search warrants. Nothing is seen in the circumstances of the present case that renders those authorities inapplicable. (See *Sgro* v. *United States,* 287 U.S. 206, 210-211 [77 L.Ed. 260, 262-263, 53 S.Ct. 138, 85 A.L.R. 108].)

The petition for a peremptory writ of prohibition is denied; the alternative writ is discharged.

Molinari, P. J., and Sims, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 5, 1973.