[No. S125572. Nov. 28, 2005.]

PEOPLE, Plaintiff and Respondent, v.
MILDRED MURPHY, Defendant and Appellant.

492

COUNSEL

Laurel Nelson Smith, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Quisteen S. Shum, Steven T. Oetting and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHIN, J.—We consider whether the circumstances in this case afforded sufficient exigency to justify a police entry to conduct a search of a residence without complying with the usual "knock-notice" rule, to prevent destruction of evidence. We conclude the "no-knock" entry was justified by the circumstances, which included (1) contemporaneous, ongoing illegal drug sales on the premises, raising the reasonable inference that more drugs were inside, (2) the officers' knowledge that defendant was on probation for a drug offense and had consented to a warrantless search of her premises, (3) the unplanned noisy confrontation with a suspect directly outside defendant's open doorway, and (4) the officers' loud announcement of their presence and purpose to the suspect.

The foregoing conclusion makes it unnecessary for us to consider the People's alternative argument that the so-called inevitable discovery doctrine applies here to validate the search despite a possible knock-notice violation, an issue now pending before the United States Supreme Court. (*Hudson v. Michigan*, cert. granted June 27, 2005, No. 04-1360.)

## FACTS

Defendant Mildred Murphy appeals the denial of her motion to suppress evidence (Pen. Code, § 1538.5, subd. (m)) after having pleaded guilty to

possessing methamphetamine for sale (Health & Saf. Code, § 11378). The following uncontradicted facts are taken largely from the Court of Appeal opinion in this case. Because the question whether sufficient exigent circumstances existed depends on a close examination of the surrounding facts, we recite those facts in some detail.

At approximately 1:00 p.m. on November 7, 2001, on investigating a citizen's complaint, Detective Alberto Santana of the San Diego County Sheriff's Department Street Narcotics Team observed a woman leave defendant's residence, and drive away. Santana, suspecting a drug transaction had taken place, stopped the car. The driver admitted she had obtained methamphetamine from defendant. Santana decided to conduct a probation search of defendant's residence. (It is undisputed that defendant was then on probation and had consented to warrantless searches of her residence as a condition of her probation.)

While Detective Marlow maintained surveillance of defendant's residence, Santana developed an operational plan for the search. He was familiar with the layout of the house, having had previous contact with defendant. Because Santana had observed people coming out of defendant's converted bedroom in the garage, he decided the search team should enter through the garage.

During the surveillance, Marlow observed defendant greet a man in front of her house. They walked around the side of the house and reappeared a few minutes later. It appeared to Marlow that they were exchanging something. Shortly thereafter, Santana and other members of the search team arrived, wearing plain clothes, but with black bulletproof vests with the word "Sheriffs" on them, and hats marked with the words "Sheriff's Narcotics." Marlow also observed yet another man near defendant's garage. Once Santana and the other members of the search team arrived, Marlow alerted them to this man's presence.

Santana and the other officers approached this man, later identified as Michael Thomaselli, who was standing near the corner of the garage clenching something in one hand. Santana pointed a gun at Thomaselli and "[i]n a loud voice . . . [a]lmost yelling," said to him, "Sheriff's Department. Probation search. Get on the ground." The other members of the team were also yelling, "Sheriff's Department," and they all had their guns drawn. Thomaselli was actually repairing a fence for defendant and was holding some screws in his hand. The officers at no time observed any interaction between defendant and Thomaselli.

When the officers confronted Thomaselli, Santana heard a dog barking loudly from inside defendant's house. At least five to seven seconds later,

Santana and other members of the team entered the residence, without knocking. Santana said he did not knock because he knew that "anyone in the residence or in the bedroom would have heard us" yelling at Thomaselli. Santana testified that "seeing the sliding glass window was opened and a dog was barking, we continued in." Santana believed the team's stakeout had been "compromise[d]" and feared persons in the residence might arm themselves, destroy evidence, or flee. Santana testified that he and four or five members of his team entered the house with their guns drawn.

Upon searching the residence, the officers found defendant at the opposite end of the house from where they had entered, in a bedroom with her bedridden ex-husband. Defendant was read her *Miranda* rights and waived them. She readily admitted having sold methamphetamine and showed the officers the location of a scale and six baggies that contained the drug. The officers also found several "pay and owe" sheets in defendant's house.

Thomaselli testified that when he encountered the officers, they ordered him to the ground, at gunpoint. After he was on the ground, the officers asked him whether defendant was inside the house, and he told them she was. Thomaselli did not see them enter the house.

Defendant testified on her own behalf. She was in a back bedroom with the door shut, caring for her ex-husband, when the officers entered the house. She heard someone calling her name and was disturbed because she did not know who it was. Prior to hearing her name called, she did not believe she had heard anyone say anything about police or probation. After she heard her name called, defendant opened the bedroom door and found one of the officers standing in the doorway, pointing a gun at her face. He told defendant to put her hands up.

Defendant was charged with possession of methamphetamine for sale (Health & Saf. Code, § 11378). She pleaded not guilty and filed a motion to suppress evidence, pursuant to Penal Code section 1538.5, claiming that in conducting the search, the officers had violated California's knock-notice requirements and the Fourth Amendment. The preliminary examination hearing served also as an evidentiary hearing for the motion to suppress and the probation revocation.

The court initially found there were no exigent circumstances that would excuse the officers' duty to comply with the knock-notice requirements. The court reasoned that when the officers entered defendant's residence, they had insufficient reason to believe drugs were being flushed or otherwise destroyed, or that anyone in the house was arming himself or herself. In addition, they had no reason to believe defendant was likely to be armed, and they could see she was not attempting to flee.

The court also determined, however, that the officers' shouting at Thomaselli, identifying themselves as sheriff's deputies, and announcing their intent to conduct a probation search, sufficiently notified the occupants of the impending search, thereby satisfying knock-notice requirements. The court observed that the officers' entry occurred "at least five to seven seconds [after they shouted at Thomaselli], I think it was probably longer, certainly from Mr. Thomaselli's testimony." The court opined that this was "plenty of time once that notification is made for someone to come to the door and find out what the heck is going on." The court denied the motion to suppress on the ground that the officers had substantially complied with knock-notice requirements. The court also found the evidence was sufficient to hold defendant to answer for the methamphetamine charge and revoked her probation.

Defendant filed a motion to set aside the information, pursuant to Penal Code section 995, on the ground that the law enforcement officers had violated knock-notice requirements. The trial court denied the motion. Defendant then pleaded guilty to possessing methamphetamine for sale. The trial court placed defendant on probation for a period of three years on the condition that she serve 210 days in custody, and fined her $550. The court later determined that defendant was eligible for electronic surveillance and revised the 210-day commitment order accordingly. Defendant filed a timely appeal.

On appeal, the Court of Appeal filed a divided opinion reversing the judgment. The majority concluded that the evidence seized during the search was obtained in violation of California's knock-notice requirements and the Fourth Amendment, and must therefore be suppressed. We granted the People's petition for review and directed the Court of Appeal to vacate the opinion and reconsider its decision in light of *United States v. Banks* (2003) 540 U.S. 31 [157 L.Ed.2d 343, 124 S.Ct. 521] (*Banks*), which was decided after it filed its opinion in this case.

On reconsideration, a majority of the Court of Appeal again concluded that the search of defendant's residence violated California's knock-notice requirements and the Fourth Amendment, and that the evidence seized during the search must be suppressed. Justice Benke again dissented. We again granted review and will reverse.

## DISCUSSION

■ As a general rule, before entering a house to make an arrest or perform a search, officers must first identify themselves, explain their purpose, and demand admittance. (*People v. Rosales* (1968) 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489] (*Rosales*) [failure to state purpose invalidated

entry]; *People v. Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6] (*Maddox*) [knock-notice compliance excused where officer had good faith belief his peril would increase or occupants would flee]; see Pen. Code, §§ 844, 1531; see generally Annot., Knock-and-Announce Compliance (2001) 85 A.L.R.5th 1 (Annotation).) The purpose of this so-called knock-notice rule is (1) to protect the privacy of the householder; (2) to safeguard innocent persons on the premises; (3) to prevent violent confrontations arising from unannounced entries; and (4) to protect the police themselves from injuries caused by a surprised or fearful householder. (*People v. King* (1971) 5 Cal.3d 458, 464, fn. 3 [96 Cal.Rptr. 464, 487 P.2d 1032].) The rule applies to entries through unlocked doors as well as "break-in" entries achieved by force. (*Rosales, supra*, 68 Cal.2d at p. 303 & fn. 4.)

The People no longer contend that the officers' conduct substantially complied with the knock-notice rule, and we do not consider that issue here. (See, e.g., *People v. Hoag* (2000) 83 Cal.App.4th 1198, 1208–1212 [100 Cal.Rptr.2d 556] (maj. opn. of Hull, J.); *id.* at pp. 1219–1229 (dis. opn. of Sims, Acting P. J.).) The People also do not dispute that the knock-notice rule applies to probation searches. (See *People v. Lilienthal* (1978) 22 Cal.3d 891, 900 [150 Cal.Rptr. 910, 587 P.2d 706]; *People v. Mays* (1998) 67 Cal.App.4th 969, 973, fn. 4 [79 Cal.Rptr.2d 519].) The People do contend, however, that exigent circumstances justified the knock-notice violation. As previously noted, they also argue alternatively that the inevitable discovery doctrine validated the search, an issue we decline to reach.

In the present case, the trial court (magistrate) found no exigent circumstances existed to excuse the officers' duty to comply with the knock-notice requirements, as the officers did not know that drugs were being flushed or otherwise destroyed, or that anyone in the house was arming himself or herself or attempting to flee. Of course, this finding, to the extent it states a legal conclusion, is not binding on us. "In reviewing a ruling on a motion to suppress evidence, we defer to the trial court's findings of fact, whether express or implied, if those findings are supported by substantial evidence. We independently determine the relevant legal principles and apply those principles in evaluating the reasonableness of the search based on the facts as found by the trial court." (*People v. Mays, supra*, 67 Cal.App.4th at p. 972.)

■ We have held that failure to comply with the knock-notice rule may be excused when exigent circumstances exist. For example, in *Maddox, supra*, 46 Cal.2d 301, an officer acting with reasonable cause to make a narcotics arrest kicked down defendant's door after knocking and hearing retreating footsteps. Although the officer failed to demand admittance or explain his purpose, we upheld the seizure of narcotics found within. We observed that full compliance with knock-notice requirements could delay an

officer's entry and thereby "permit [the] destruction or secretion of evidence . . . ." (46 Cal.2d at p. 305.) Because the officer in *Maddox* clearly had the right to enter and invade defendant's privacy, "there is no compelling need for strict compliance with the requirements of [Penal Code] section 844 to protect basic constitutional guarantees." (*Id.* at p. 306.)

In *Maddox*, we framed the applicable test for exigent circumstances this way: "[W]hen there is reasonable cause to make an arrest and search and the facts known to [the officer] before his entry are not inconsistent with a good faith belief . . . that compliance with [Penal Code] section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains." (*Maddox, supra,* 46 Cal.2d at pp. 306–307.) More recent cases have slightly rephrased that test so that strict compliance with the knock-notice rule is excused "if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, *or permit the destruction of evidence.*" (*People v. Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589], italics added; see *People v. Dumas* (1973) 9 Cal.3d 871, 877 [109 Cal.Rptr. 304, 512 P.2d 1208]; *Rosales, supra,* 68 Cal.2d at p. 305; *People v. Flores* (1982) 128 Cal.App.3d 512, 521 [180 Cal.Rptr. 368] (*Flores*); see also Annot., *supra,* 85 A.L.R.5th at pp. 179–182, § 50, citing similar out-of-state cases.)

We have also made clear, however, that no blanket rule exists exempting all narcotics cases from the knock-notice rule; instead, a specific showing must be made to justify an unannounced entry or break in. (*Rosales, supra,* 68 Cal.2d at p. 305; *People v. Gastelo* (1967) 67 Cal.2d 586, 587–589 [63 Cal.Rptr. 10, 432 P.2d 706].) In other words, the mere fact that the officers are aware of contemporaneous drug activity on the premises does not provide per se justification for a no-knock entry.

Nonetheless, we think the People made a sufficient specific showing of exigent circumstances here. *Flores, supra,* 128 Cal.App.3d 512, is very close on point. There, the officers were aware of recent or contemporaneous drug sales on the premises and obtained a search and arrest warrant. Before entering the premises, the officers confronted defendant Flores outside, arrested him, and yelled through the open door, " 'Police officer with a search warrant. Demand an entry.' " (*Id.* at p. 518.) Knowing that any drugs on the premises could be quickly destroyed by other persons they knew were inside, the officers entered a few seconds later, seizing drugs and various other items. (*Id.* at pp. 518–519.)

The *Flores* court acknowledged the officers entered without giving the occupants a reasonable opportunity to permit or refuse peaceable entry. (See

*Brown v. Superior Court* (1973) 34 Cal.App.3d 539, 543 [110 Cal.Rptr. 107].) But the court found sufficient exigent circumstances to excuse strict compliance: "[T]he specific facts known to [the police officer] included the immediately preceding large heroin sale actively engaged in by [a codefendant] whom he knew was inside the same house where heroin sales of increasing amounts were completed in four of the past six days and . . . the yelling at [defendant] just outside the open front door which he reasonably could consider as having warned those inside of the officers' presence and purpose." (*Flores, supra,* 128 Cal.App.3d at p. 521.) These two factors, ongoing drug sales and a loud announcement of the officers' identity and purpose, are similarly present in this case.

We also find strong support for our holding in *Banks, supra,* 540 U.S. 31. *Banks* recently clarified the federal constitutional principles governing nonconsensual entries made without full compliance with knock-notice requirements. These principles, which seem fully compatible with the California cases discussed *ante,* necessarily govern our analysis here. (Cal. Const., art. I, § 28, subd. (d); see *In re Lance W.* (1985) 37 Cal.3d 873, 884–890 [210 Cal.Rptr. 631, 694 P.2d 744].) In *Banks,* the officers obtained a search warrant based on an informant's tip that the defendant was selling cocaine from his home. The officers arrived at the premises, called out " 'police search warrant,' " knocked loudly on the door, and after 15 to 20 seconds broke in with a battering ram. A house search uncovered contraband and other incriminating evidence. (*Banks, supra,* 540 U.S. at p. 33.) The Ninth Circuit Court of Appeal reversed a trial court denial of suppression of the foregoing evidence, and the high court granted certiorari to consider whether the officers waited a reasonable time before breaking in. The court upheld the entry and search. (*Banks, supra,* 540 U.S. at pp. 34–35.)

Unlike the present case, the officers in *Banks* actually knocked and formally announced their purpose before breaking in. Yet the *Banks* court did not treat that fact as legally significant because "there is no reason to treat a post-knock exigency differently from the no-knock counterpart" because "the same criteria" should apply in determining whether the officers could legitimately enter after knocking or whether a knock and announcement were required in the first place. (*Banks, supra,* 540 U.S. at pp. 40, 35.)

The *Banks* court repeated the previous test for allowing a "no-knock" entry, namely, that the police must " 'have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or . . . would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.' " (*Banks, supra,* 540 U.S. at p. 36, quoting *Richards v. Wisconsin* (1997) 520 U.S. 385, 394 [137 L.Ed.2d 615, 117 S.Ct. 1416].) *Banks* noted that, under *Richards,*

"if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in" without knocking. (*Banks, supra*, 540 U.S. at p. 37.)

With respect to the exigency present whenever drugs are involved, *Banks* agreed that after waiting 15 or 20 seconds without a response to their knock, the officers could reasonably suspect that any drug on the premises would be flushed away unless they forcibly broke in. (*Banks, supra*, 540 U.S. at p. 38.) The court observed that "when circumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter . . . ." (*Id.* at p. 40.)

As noted, a majority of the Court of Appeal in the present case found no exigent circumstances to excuse the officers from complying with the knock-notice rule. The majority agreed with the magistrate that the officers provided insufficient facts to justify their fear that evidence could be destroyed absent immediate entry. In this regard, the court expressly declined to follow the *Flores* rationale (see *Flores, supra*, 128 Cal.App.3d at p. 521) that contemporaneous sales on the premises, coupled with the officers' yelling at one suspect outside the open door, justified immediate entry to prevent destruction of evidence. As for *Banks, supra*, 540 U.S. 31, the Court of Appeal majority attempted to distinguish that case as one in which the officers actually knocked before entering, seemingly ignoring *Banks*'s statement that the same standards it was announcing would apply in a "no-knock" situation if the requisite "reasonable suspicion of exigency" existed. (*Banks, supra*, 540 U.S. at pp. 36–37.)

The dissenting opinion of Acting Presiding Justice Benke in this case argued that exigent circumstances existed based on defendant's ongoing or contemporaneous drug transactions on or near the premises, the officers' loud shouting at Thomaselli identifying themselves as officers conducting a probation search, and their reasonable belief that defendant was thereby amply alerted to their presence and purpose. As the Benke dissent observed, "[n]ot only would knocking and waiting for a response from occupants have been futile and risk destruction of drugs, in this case the officers' staging plan was in disarray, their attention necessarily diverted from appellant and entering her house to the chaos of dealing with events outside. . . . Moreover, as the United States Supreme Court reminds us, we are not at liberty to substitute our views on how the officers *should* have responded, but rather we are obligated to view the reasonableness of their actions through *their* eyes at the time they are confronted with the alleged exigency. Under the chaotic circumstances here, it was reasonable for Santana to choose a course of action that preserved the safety of the officers.

"The majority would have these officers, in the midst of the commotion and drug dealing around them, with guns drawn, stand at a partially opened sliding glass door they could not see through (but presumably through which they could be seen by those inside). There they would be required to knock and count the seconds, somehow reflecting individually or as a group upon preceding events to determine how long they should wait. This is not realistic. Nor is it a result contemplated by existing law."

■ We agree with the Court of Appeal dissent that exigent circumstances excused compliance with the knock-notice rule in this case. The officers reasonably could assume, based on their knowledge of defendant's probationary status allowing warrantless searches and the apparent ongoing and contemporaneous drug sales on the premises, that some drugs were still present inside which could be readily destroyed once defendant became aware of the officers' identity and intent. The officers could also reasonably suspect that the commotion occurring immediately outside defendant's open door, including the officers' loud identification of themselves as members of the sheriff's department seeking to execute a probation search, and the sound of a barking dog inside the premises, together would alert defendant to destroy or conceal any drugs on the premises unless the officers entered without further delay. As the trial court found, the loud confrontation with Thomaselli was sufficient to put defendant on notice of the officers' identity and purpose.

We stress, of course, that police officers are not permitted to contrive to create their own exigency by making loud noises before entering, or even by loudly announcing their presence and purpose to serve as a pretext for entering without knocking. But nothing in the record suggests the officers prearranged or contrived the confrontation with Thomaselli.

Defendant observes that in *Banks, supra,* 540 U.S. at page 33, the officers waited 15 to 20 seconds before entering, whereas here the officers entered after a mere five to seven seconds after announcing their identity and purpose to Thomaselli. First, the trial court found that "probably" more time had elapsed than merely five or seven seconds. Second, in the present case, the officers entered through an unlocked open door. But in *Banks,* the officers determined to use a battering ram to break down the defendant's door and obviously needed more time to prepare for and execute an entry in such manner. In any event, in the words of the high court in *Banks, supra,* 540 U.S. at page 40, "when circumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter."

Defendant also argues that police officers should not be allowed to dispense with the requirement of an actual knock merely because they have previously announced their identity and purpose. We agree that even in drug cases, ordinarily officers executing a search must complete the knock-notice procedure and may not rely on their announcement as itself creating an exigency justifying immediate entry. As noted *ante*, however, no evidence exists in this case to suggest the officers contrived to use their confrontation with Thomaselli as an excuse to avoid compliance with the knock-notice rule.

We conclude that, under the facts in this case, the officers' entry without knocking was justified by exigent circumstances.

The judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., and Baxter, J., concurred.

**MORENO, J.,** Dissenting.—The majority concludes that exigent circumstances excused the sheriff's deputies in the present case from complying with the constitutional requirement, codified in Penal Code section 1531, that a law enforcement officer may not enter a residence to execute a search warrant (or conduct a probation search) unless "after notice of his authority and purpose he is refused admittance." (*Ibid.*)[1] I disagree. Although this is a close case, in my view, the commotion that occurred as the sheriff's deputies approached the residence may have alerted the occupants to the presence of the police and their purpose, and thus may have obviated the need to announce the officers' authority and purpose, but it did not excuse the officers from affording the occupants an opportunity to permit or "refuse[] admittance." (§ 1531.)

In *People v. Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], we recognized that the parallel "knock-notice" requirement in section 844[2] "is designed to protect fundamental rights. 'Decisions in both the federal and state courts have recognized, as did the English courts, that the requirement is of the essence of the substantive protections which safeguard individual liberty.' [Citation.] [¶] The statute reflects more than concern for the rights of those accused of crime. It serves to preclude violent resistance to unexplained entries and to protect the security of innocent persons who may also be present on premises where an arrest is made. 'We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

[2] Section 844 states that a peace officer may break open the door of a house to make an arrest "after having demanded admittance and explained the purpose for which admittance is desired."

officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. . . . Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.' " (*Rosales, supra,* 68 Cal.2d at pp. 304–305, fn. omitted.)

In the present case, Detective Alberto Santana approached defendant's residence with his team of officers to conduct a probation search knowing that defendant was actively engaged in selling drugs from the residence. The officers were wearing bulletproof vests with the word "Sheriffs" printed on them, and baseball caps that said "Sheriff's Narcotics." The focus of the search was the attached garage, which defendant had converted into a bedroom and which had a sliding glass door on the side.

Rather than approach the front door of the residence, the officers went through a gate to approach the sliding glass door of the converted garage, but as they turned the corner, the detective came "face-to-face" with a man "clenching something in his hand." The detective, with his gun drawn, said "[i]n a loud voice . . . [a]lmost yelling," "Sheriff's Department. Probation search. Get on the ground." He believed that the other members of his team also had their guns drawn and yelled the same thing. The man, later identified as Michael Thomaselli, had been repairing the fence and was holding only screws in his hand.

A dog began barking inside the converted garage. Believing their operation had been "compromise[d]" because "anyone in the residence or in the bedroom would have heard us" and "could possibly arm themselves, could possibly destroy evidence or possibly run," Detective Santana organized his team of officers and, within five to seven seconds, entered the sliding glass door, which was open, without knocking. As they entered, the officers yelled "Sheriff's Department, probation search." The sole occupant of the converted garage was the barking dog. The officers entered the residence proper and crossed the dining room, the living room, and a hallway before finding defendant and her ex-husband, who is bedridden, in his bedroom at the rear of the house.

Defendant testified that just before the police arrived, she had gone into her ex-husband's bedroom and shut the door. She later heard someone calling her

name and opened the bedroom door to find a sheriff's deputy pointing a gun at her and ordering her to raise her hands.

The superior court denied the motion to suppress evidence, erroneously concluding that the officers had substantially complied with the knock-notice requirement by announcing their presence and their purpose when they encountered the worker outside the door of the converted garage, but the court further found that no exigent circumstances had excused compliance with the knock-notice requirement: "[T]here are no known exigencies. . . . They don't know if there are drugs being flushed, they don't know that anybody is being armed. . . . They didn't have any reason to believe she was armed. They could see she wasn't fleeing. They have the place surrounded. There is no exigency."

The Court of Appeal reversed, correctly recognizing that the officers did not substantially comply with the knock-notice requirement, and concluding, as did the superior court, that there were no exigent circumstances that excused such compliance.

The People no longer argue that the officers substantially complied with the knock-notice requirement, and I agree with the superior court and the Court of Appeal that there were no exigent circumstances excusing compliance with the knock-notice requirement. The majority reaches the opposite conclusion that it was proper for the officers to enter defendant's residence without giving "notice of [their] authority and purpose" and being "refused admittance" as required by section 1531. My disagreement centers upon a single sentence in the majority opinion, which appears in the paragraph summarizing the majority's reasoning.

The majority summarizes its reasoning as follows: "The officers reasonably could assume, based on their knowledge of defendant's probationary status allowing warrantless searches and the apparent ongoing and contemporaneous drug sales on the premises, that some drugs were still present inside which could be readily destroyed once defendant became aware of the officers' identity and intent. The officers could also reasonably suspect that the commotion occurring immediately outside defendant's open door, including the officers' loud identification of themselves as members of the sheriff's department seeking to execute a probation search, and the sound of a barking dog inside the premises, together would alert defendant to destroy or conceal any drugs on the premises unless the officers entered without further delay. As the trial court found, the loud confrontation with Thomaselli was sufficient to put defendant on notice of the officers' identity and purpose." (Maj. opn., *ante*, at p. 500.)

I agree with the majority that "the loud confrontation with Thomaselli was sufficient to put defendant on notice of the officers' identity and purpose." (Maj. opn., *ante*, at p. 500.) But section 1531 requires more than just notification of the officer's presence and purpose, it further requires that the occupants have "refused admittance." The loud confrontation with Thomaselli, therefore, might have made it unnecessary for the officers to announce their authority and purpose but it did not permit the officers to enter the residence until they had either been granted or refused admittance. Such a refusal to admit the officers may be implied, of course, if the occupants do not respond within a reasonable time following a demand for entry. (*United States v. Banks* (2003) 540 U.S. 31, 38 [157 L.Ed.2d 343, 124 S.Ct. 521]; *People v. Gonzalez* (1989) 211 Cal.App.3d 1043, 1047 [259 Cal.Rptr. 846].)

I also agree with the majority that "[t]he officers reasonably could assume, based on their knowledge of defendant's probationary status allowing warrantless searches and the apparent ongoing and contemporaneous drug sales on the premises, that some drugs were still present inside which could be readily destroyed once defendant became aware of the officers' identity and intent." (Maj. opn., *ante*, at p. 500.) But as the majority acknowledges, "no blanket rule exists exempting all narcotics cases from the knock-notice rule . . . . In other words, the mere fact that the officers are aware of contemporaneous drug activity on the premises does not provide per se justification for a no-knock entry." (Maj. opn., *ante*, at p. 497.) There always is a risk that the occupants of a residence that contains drugs may attempt to destroy those drugs as soon as an officer executing a warrant or conducting a probation search announces his or her presence and demands admittance. Nevertheless, the officer cannot lawfully enter until the occupants have either granted or refused admittance or have been given a reasonable opportunity to do so.

My disagreement with the majority, therefore, hinges upon the following statement: "The officers could also reasonably suspect that the commotion occurring immediately outside defendant's open door, including the officers' loud identification of themselves as members of the sheriff's department seeking to execute a probation search, and the sound of a barking dog inside the premises, together would alert defendant to destroy or conceal any drugs on the premises unless the officers entered without further delay." (Maj. opn., *ante*, at p. 500.) I disagree with half of this statement. As noted above, I agree that the officers reasonably could conclude that the commotion outside the door would alert the occupants to the presence and purpose of the officers, but I strongly disagree that the officers had a reasonable basis for concluding that such notice of the presence and purpose of the officers would lead the occupants "to destroy or conceal any drugs on the premises unless the officers entered without further delay." (*Ibid.*)

The superior court found that the officers had no reason to conclude that drugs were being destroyed or that the occupants were fleeing or arming themselves: "They don't know if there are drugs being flushed, they don't know that anybody is being armed. . . . They didn't have any reason to believe she was armed. They could see she wasn't fleeing. They have the place surrounded." As the majority acknowledges, we are bound by such findings of fact that are supported by substantial evidence. (Maj. opn., *ante*, at p. 496.) Because the officers had no basis for believing that drugs actually were being destroyed, the majority is forced to rely upon the mere possibility that this could happen. Such speculation is not enough. "In the absence of some specific and articulable reasons that set the present search apart from other narcotics searches, the mere *possibility* that occupants were trying to frustrate the search does not excuse compliance with section 1531. . . . If specific indications of arming or destruction of evidence were not required, the exigent-circumstances exception would entirely consume the notice and refusal requirement." (*People v. Gonzalez, supra*, 211 Cal.App.3d 1043, 1050.)

In *Gonzalez*, the Court of Appeal ruled that an entry to serve a search warrant was unlawful when officers in plain clothes knocked on the door of the defendant's residence shortly before 1:00 a.m. A woman's voice asked, " 'Who is it?' " The officer answered, " 'Riverbank Police Department. Search warrant.' " The officer heard nothing further and, after five seconds, kicked in the door, hitting the defendant in the shoulder and knocking her to the ground. (*People v. Gonzalez, supra*, 211 Cal.App.3d 1043, 1047.) The defendant testified that when the officer identified himself, she answered, " 'just a minute' " and peered through a hole in the door, seeing a man in camouflage pants. She was about to unlock the door when it flew open. (*Ibid.*)

The Court of Appeal, in ruling that the entry was unlawful, recognized "the conflicting policies that are at work in this area": "On the inside of the door is a lone woman with two daughters; she lives in an increasingly violent society and she must decide at 12:50 a.m. whether to throw her door open to a band of armed men who claim to be police but who are standing on her front porch in scruffy street clothes. [Citation.] [¶] On the other side of the door stand officers who have no doubts about their authority and purpose—they know they are not rapists or killers, and that they are not common thugs despite their dress and the late hour of their arrival. They believe they have a drug dealer cornered inside, and they know there is someone behind the door who could let them in but who has not done so. They know nothing else about what is happening in the house, but they know that almost anything that is happening behind the closed door is likely to result in injury to them or destruction of evidence. [¶] The interests at stake on both sides of the door are quite important; and as the history of the notice and refusal of entry

requirement makes clear the interests are not easily reconciled." (*People v. Gonzalez, supra*, 211 Cal.App.3d 1043, 1049.)

Although it certainly is *possible* that the occupants of the residence in the present case, having become aware that the police were there, *might* attempt to escape or destroy evidence, that possibility always arises as soon as the police announce their presence and demand entry, as they are required to do. In *People v. Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706], Chief Justice Traynor writing for a unanimous court rejected the Attorney General's argument that the police need not comply with section 1531 when executing a search warrant for narcotics because "narcotics violators normally are on the alert to destroy the easily disposable evidence quickly at the first sign of an officer's presence." We stated: "No such basis exists for nullifying the statute in all narcotics cases, and, by logical extension, in all other cases involving easily disposable evidence. The statute does not contain the seeds of such far-reaching self-destruction." (*People v. Gastelo, supra*, 67 Cal.2d at p. 588.)

Even when the police have good reason to believe that the premises to be searched contain narcotics, and that the occupants are aware that the police are present, the police still are required to give the occupants the opportunity to respond to their demand for entry, unless the police have reason to believe that the occupants actually are attempting to escape or destroy evidence. This distinction may be subtle, but it is important. In the present case, there is nothing to indicate that, even if the occupants had become aware of the presence of the police, they were attempting to escape or destroy evidence. Accordingly, there were no exigent circumstances that excused compliance with the requirement that the officers give the occupants an opportunity to comply with the demand for entrance.

The majority relies principally upon the Court of Appeal's decision in *People v. Flores* (1982) 128 Cal.App.3d 512 [180 Cal.Rptr. 368], which the majority says is "very close on point." (Maj. opn., *ante*, at p. 497.) The circumstances in *Flores* were similar to those in the present case but, as explained below, there is a significant difference that distinguishes *Flores* from the present case. I also disagree with the reasoning in *Flores*. The reasoning in *Flores* contains a flaw that, in my view, has led astray the majority in the present case.

In *Flores*, sheriff's deputies obtained a search warrant for the defendant's residence after a paid informant made a series of controlled purchases of heroin there. As the officers waited outside, the informant purchased heroin a final time from the defendant and his accomplice. The defendant then escorted the informant back to the taxicab in which she had arrived while his

accomplice remained in the house. When the driver of the taxicab, who was a sheriff's deputy, revealed that the police were present, the defendant "ran back toward the house." Another officer yelled at the defendant to stop and placed him under arrest and then, as a fellow officer held the defendant, went immediately to the front door of the residence, which was open with the screen door ajar. He yelled, " 'Police officer with a search warrant. Demand an entry,' " and entered one or two seconds later. (*People v. Flores, supra*, 128 Cal.App.3d 512, 518–519.)

The Court of Appeal in *Flores* held that the entry was lawful, despite the officer's failure to wait for a response after announcing his presence and purpose, reasoning that "[s]trict compliance [with section 1531] is more readily excused where the police in good faith believe their presence and purpose to enter is already known to the occupants [citations]." (*People v. Flores, supra*, 128 Cal.App.3d 512, 521.) This echoed an identical statement in *Brown v. Superior Court* (1973) 34 Cal.App.3d 539, 543 [110 Cal.Rptr. 107]. The Courts of Appeal in both *Flores* and *Brown* cited in support of this proposition our decision in *People v. Rosales, supra*, 68 Cal.2d 299, 302, but we said nothing of the kind in *Rosales*.

In *Rosales*, we invalidated an arrest and resulting search because the officers entered the residence without complying with the knock-notice requirement of section 844. The officers went to the defendant's residence to arrest him for a parole violation. As they approached the residence, they looked through the screen door and saw the defendant in the living room. They entered and arrested the defendant, telling a girl they passed in the living room that they were police officers, but failing to announce their purpose or demand entry. We held that the fact that the officers told the girl that they were police officers was not sufficient to comply with section 844 because they did not also explain their purpose and demand admittance: "Such identification alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile. There is nothing in the record to show that any of the occupants or even the girl knew that the officers' purpose was to arrest the defendant or understood that they were demanding admittance." (*People v. Rosales, supra*, 68 Cal.2d 299, 302, fn. omitted.) We did not suggest in *Rosales* that the circumstance that the occupants of a residence are aware of the presence and purpose of the police excuses the requirement that the police demand admittance and permit the occupants to respond to that demand before entering. To the contrary, we held that the entry in *Rosales* was unlawful, recognizing that section 844, like section 1531, "requires that an officer

explain his purpose before demanding admittance, not merely that he identify himself as an officer." (*People v. Rosales, supra,* 68 Cal.2d at p. 302.)

Although I find the reasoning in *Flores* to be flawed in this respect, I believe the Court of Appeal may have reached the correct result in that case. Unlike the present case, the officers in *Flores* may have had reason to believe that an immediate entry into the residence was necessary to forestall the imminent destruction of evidence. As noted above, the defendant in *Flores* had left his residence, leaving his accomplice in the house and, upon learning that the police were present, "ran back toward the house." (*People v. Flores, supra,* 128 Cal.App.3d 512, 518.) The officer could reasonably have concluded that the defendant's purpose in running back to his residence was to destroy evidence or escape apprehension. Because the defendant's accomplice remained in the house, the officer had reason to believe that it was necessary to enter the residence immediately to prevent the defendant's accomplice from accomplishing what the defendant had just been prevented from doing.

The importance of the circumstance in *Flores* that the defendant ran when he learned the police were present is demonstrated by comparing the decision in *Flores* with the decision in *People v. Neer* (1986) 177 Cal.App.3d 991 [223 Cal.Rptr. 555]. Police officers approached Neer's home to execute a search warrant and encountered a man working in the front yard. They detained the man (who the officers later learned was Neer), shouting: " 'We're the police department, don't move . . . we have a search warrant.' " (*Id.* at p. 994.) One of the officers then went to the front door, which was open with the screen door closed. Seeing people inside, the officer identified himself as a police officer, said he had a search warrant, and immediately entered "because he believed the occupants had heard both announcements and feared they would flee, destroy contraband or arm themselves." (*Id.* at p. 995.).

The Court of Appeal in *Neer* held that the narcotics found in the ensuing search should have been suppressed because no exigent circumstances excused the officer's violation of section 1531. The court in *Neer* concluded that "nothing [the officer] knew permitted an objectively reasonable belief exigent circumstances existed." (*People v. Neer, supra,* 177 Cal.App.3d 991, 995.) The court added: "There was no suspicious activity by the occupants . . . . Neer's detention in the front yard cannot suffice to excuse compliance with the statute. Section 1531 was violated." (*Id.* at pp. 996–997.)

The difference between the decisions in *Flores* and *Neer* is that the defendant in *Flores* began running when he learned the police were present, while no similar facts appear in *Neer.* In this respect, there is no meaningful difference between *Neer* and the present case. As in *Neer,* the officers in the present case detained a suspect outside the entrance to the residence and, in

doing so, may have alerted the occupants to their presence and purpose. As in *Neer*, the officers in the present case immediately identified themselves and their purpose and entered the residence without giving the occupants an opportunity to respond because they feared the occupants might arm themselves, destroy evidence, or run. As in *Neer*, the officers in the present case violated section 1531.

The facts in the present case are nearly identical to those in *Neer* and differ from those in *Flores* in an important respect. The person the officers encountered outside defendant's residence in the present case did not resist or attempt to enter the residence or otherwise give the officers any reason to believe that destruction of evidence was imminent. The encounter with the person outside the residence, at most, served only to alert the occupants of defendant's residence that the police were present and intended to conduct a search. This may have obviated the need for the officers to announce their presence and purpose, but it did not excuse the officers from complying with the further requirement of section 1531 that they demand admittance and permit the occupants an opportunity to respond to that demand.

The decisions in which this court has found that exigent circumstances excused compliance with the knock-notice requirement have all differed markedly from the present case. In *People v. Maddox* (1956) 46 Cal.2d 301 [294 P.2d 6], police officers had watched the defendant's residence for about a month and had seen known narcotics users visit there. The officers arrested a man soon after he left the defendant's residence who told the officers he had just injected heroin while inside the residence. They went to defendant's door and knocked. A male voice said, " 'Wait a minute,' " and the officer heard "the sound of retreating footsteps. He kicked the door open and rushed to the kitchen where he saw defendant with a spoon in his hand running toward the bedroom." (*Id.* at p. 303.)

This court rejected the defendant's argument in *Maddox* that the arrest was illegal because the officer did not comply with the knock-notice requirement of section 844, stating: "When, as in this case, he has reasonable grounds to believe a felony is being committed *and hears retreating footsteps*, the conclusion that his peril would be increased or that the felon would escape if he demanded entrance and explained his purpose, is not unreasonable." (*People v. Maddox, supra*, 46 Cal.2d 301, 306, italics added.)

In *People v. Tribble* (1971) 4 Cal.3d 826 [94 Cal.Rptr. 613, 484 P.2d 589], exigent circumstances excused police officers' failure to comply with the knock-notice requirement where they were pursuing violent criminals who reportedly were armed and the officers heard the sounds of running footsteps. The victim in *Tribble* had been kidnapped and raped by two men, one of

whom said he had a knife. After being released, the victim reported to the police the license number and description of the vehicle the men were driving. The vehicle was registered to the defendant. Officer Moen went to the defendant's apartment, saw the vehicle parked in the driveway, and found the victim's photograph album on top of the vehicle. Two men in a Volkswagen that had been parked near the defendant's vehicle "started to back out and then drove rapidly forward and stopped." (*Id.* at p. 833.) Other officers arrested the two men and recovered a gun. Officer Moen went to the defendant's apartment "where he heard what sounded like running footsteps." (*Ibid.*) The officer forced open the door and arrested the defendant.

This court concluded that exigent circumstances excused the officer's failure to comply with the knock-notice requirement of section 844: "In the present case, the violent character of the crimes involved, the victim's report that her assailants had a knife, the recovery of a gun from the Volkswagen, *and the sound of running footsteps* within fully justified Officer Moen's stated belief that 'I felt that there was a possibility of bodily injury to myself or my partner if we hesitated.' Compliance with section 844 was therefore excused." (*People v. Tribble, supra,* 4 Cal.3d at p. 833, italics added.)

In *People v. Dumas* (1973) 9 Cal.3d 871, 877 [109 Cal.Rptr. 304, 512 P.2d 1208], compliance with section 1531 was excused where the police serving a search warrant had been told by an informant that the defendant possessed several firearms "and that he invariably answered the door with a loaded gun in his hand." In *People v. Carrillo* (1966) 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377], an officer who had gone to the defendant's residence to arrest him for violating his parole on a narcotics offense, entered through a screen door without complying with section 844 when he "*saw defendant moving quickly* through the kitchen at about the same time that another officer knocked on the front door." (Italics added.)

No similar facts appear in the present case. Although the officers had reason to believe that defendant possessed narcotics and may have become aware that the officers were present and intended to search, they did not observe anyone moving quickly within the residence, or hear the sound of running footsteps, or have information that the occupants were armed. The superior court so found, and we are bound by its finding of fact as it is supported by substantial evidence. (Maj. opn., *ante,* at p. 496.) Even if the commotion that occurred outside the entrance to defendant's residence had obviated the need for the officers to knock on the door and announce their intention to enter and conduct a search, they still were obligated to wait a short time to permit the occupants to admit them peacefully, or to refuse them

admittance, before they could enter the residence. (See *United States v. Banks*, *supra*, 540 U.S. 31, 33 [officers executing a search warrant "called out 'police search warrant' and rapped hard enough on the door to be heard by officers at the back door," then waited 15 to 20 seconds before entering].)

Werdegar, J., and Blease, J.,* concurred.

Appellant's petition for a rehearing was denied February 1, 2006. Chin, J., did not participate therein. Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.

---

*Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.